Valerie V. MUNDT, Petitioner,

v.

NORTHWEST EXPLORATIONS, INC., and Richard Dean, Respondents.

No. S–8494.

Supreme Court of Alaska.

Aug. 14, 1998.

---

Valerie V. Mundt, Fairbanks, pro se.

Elliott T. Dennis, Pletcher, Weinig, & Merriner, Anchorage, for Respondent Northwest Explorations, Inc.

No appearance by Respondent Richard Dean.

Before MATTHEWS, C.J., and COMPTON, EASTAUGH, FABE and BRYNER, JJ.

## OPINION

PER CURIAM.

## I. INTRODUCTION

Valerie Mundt petitioned this court to review the superior court's refusal to let her peremptorily change the judge assigned to this case. She tried to do so after intervening in the case to challenge a quiet-title order. The order implemented a judgment enforcing a settlement agreement between Northwest Explorations, Inc. and a third party. Mundt claims that the order invalidates her title to properties outside the scope of the settlement agreement. We granted her petition. For largely the same reasons that we recently held that Mundt had a right to intervene in the case, we reverse the order denying her peremptory challenge, and remand for further proceedings.

## II. FACTS AND PROCEEDINGS

We briefly recounted this litigation's history in *Mundt v. Northwest Explorations, Inc.*, 947 P.2d 827 (Alaska 1997) (*Mundt I*), the third chapter of that history that we have written. *See also Ashbrook v. Northwest Explor., Inc.*, Mem. Op. & J. No. 776 (Alaska, May 10, 1995); *Ashbrook v. Northwest Explor., Inc.*, Mem. Op. & J. No. 726 (Alaska, June 22, 1994) (*Ashbrook I*). We recount the facts even more briefly for this opinion—chapter three, part two.

In 1989 Daniel Ashbrook and Northwest began litigating over some parcels of land, some of which Ashbrook later deeded to Mundt. Ashbrook and Northwest agreed to a settlement requiring Ashbrook to convey various parcels to Northwest. We affirmed a judgment enforcing the agreement over Ashbrook's objections. *See Ashbrook I.* When the superior court entered an order quieting title to the parcels that Ashbrook had agreed to give Northwest, it voided the deeds conveying land from Ashbrook to Mundt. At this point, Mundt sought to intervene as of right in the case, arguing that the quiet-title order divested her not only of parcels to which the settlement entitled Northwest, but of parcels to which it had no right. The superior court denied her motion to intervene; we reversed. *See Mundt I*, 947 P.2d at 831.

On remand, Mundt filed a timely notice of change of judge under Alaska Civil Rule 42(c), which prescribes procedures for exercising the right to peremptorily change judges created by AS 22.20.022. *See Tunley v. Municipality of Anchorage Sch. Dist.*, 631 P.2d 67, 70–71 (Alaska 1981). Northwest opposed the change, and the superior court denied it without comment. The court also summarily denied Mundt's motion to reconsider. She petitioned this court for review.

## III. DISCUSSION

### A. Reviewing the Superior Court's Decision Now Will Avoid Unnecessary Delay and Expense for the Parties and Court.

■ Because the superior court's refusal to change judges is not a final judgment, we will review it only if the reasons to do so outweigh "the sound policy behind the rule requiring appeals to be taken only from final judgments." Alaska R.App. P. 402(b). Northwest concedes that, if Mundt is indeed entitled to a peremptory change of judge, it will spare the parties and the court system delay and expense to determine that now, rather than learn on appeal that the superior court should have changed judges, and have to retry the case before a new judge. This implicates the first ground for granting interlocutory review under Appellate Rule 402. *See* Alaska R.App. P. 402(b)(1) ("Postponement of review until appeal may be taken from a final judgment will result in injustice because of ... unnecessary delay, expense, hardship or other related factors[.]"). Given Northwest's sensible concurrence on this point,[1] we granted Mundt's petition.

### B. The Superior Court Erred in Declining to Change Judges

■ While the superior court gave no reasons for ruling that Civil Rule 42(c) did not afford Mundt a right to a change of judge,[2] Northwest articulated three reasons for such a ruling in opposing Mundt's notice of change of judge, and in responding to her petition for review.[3] We address them in turn.

#### 1. Ashbrook and Mundt are not on the same side of this action.

■ Rule 42(c) provides that "each side [in an action] is entitled as a matter of right to a change of one judge.... Two or more parties aligned on the same side of an action, whether or not consolidated, shall be treated

---

1. Northwest does urge us to deny review because Mundt's notice of change of judge is a "delay tactic," and because granting review and requesting briefing could extend the litigation for months. Our conclusion that we can reverse the decision below without having to request briefing, however, obviates that problem.

2. The interpretation and application of Rule 42(c) poses a question of law that we review *de novo. See Staso v. State, Dep't of Transp.*, 895 P.2d 988, 990 (Alaska 1995).

3. Northwest's response to Mundt's petition enumerates four reasons, but two of them are basically the same.

as one side for purposes of the right to a change of judge...." Alaska R. Civ. P. 42(c)(1). Ashbrook peremptorily changed the judge in this case in 1990. Given that Ashbrook and Mundt are "aligned on the same side" of this action, Northwest argues, their "side" has thus already exhausted its right to a change of judge.

In reversing the superior court's determination that Mundt had no right to intervene, we held that "Ashbrook's interests were not coextensive with those of Mundt, since he would receive title to the parcels in question if the deeds conveying them to her were invalidated." *Mundt I,* 947 P.2d at 831. It is thus the law of the case that Mundt's and Ashbrook's interests differ. Mundt also notes that the court could invalidate her title to property that she claims is rightly hers and is unaffected by the Northwest–Ashbrook dispute. If the court uses that property to satisfy Ashbrook's obligation to Northwest, it will give Ashbrook the windfall of having both sold the property to Mundt and then gotten part of it back, without compensating her, to meet his duty to Northwest. "Far from being co-extensive," she concludes, her "'side' and Ashbrook's 'side' are actually opposed."

■ Northwest offers no reason why Mundt's and Ashbrook's interests differ enough that Mundt has a right to intervene, but not enough for them to be on different "sides." Northwest quotes a test for whether parties are "on the same side" of an action for purposes of federal diversity jurisdiction. *See* 13B Charles A. Wright et al., *Federal Practice and Procedure: Civil* § 3607 (1984) (describing test as "whether the parties [share] the same 'ultimate interests' in the outcome of the action"). This test only provides a new verbal formula for the same inquiry into the parties' interests; it cannot change the fact that Ashbrook simply does

not share Mundt's "ultimate interest" in undoing the invalidation of the deeds conveying the disputed parcels from him to her. Northwest stresses that Mundt *originally* acquired her now-imperiled interests from Ashbrook, but that does not mean that his and her interests are *currently* the same. This is not a case where parties have potentially divergent interests but are still "on the same side" of the issue or issues currently in dispute. Mundt's and Ashbrook's interests, as we recently held, have already diverged. We thus make explicit what was implicit in our prior holding: they are no longer on the same "side." [4]

2. *Nothing in AS 22.20.022 or Rule 42(c) prevents an intervenor who enters a case after an initial judgment and appeal from exercising the right to peremptorily change judges.*

■ A peremptory change of judge is a matter of right. We have approvingly quoted the following commentary:

Once an application for leave to intervene has been granted, the intervenors are parties to the litigation and as such entitled to all rights enjoyed by parties ... including, according to the doctrine upheld by several decisions, the right to apply for disqualification of the judge.

P.A. Agabin, Annotation, *Intervenor's Right to Disqualify Judge,* 92 A.L.R.2d 1110, 1112 (1963) (quoted in *Tunley,* 631 P.2d at 73 n. 11).

Northwest challenges Mundt's reliance on that comment by noting that we have never established a "bright-line rule" that an intervenor can change judges "when the case is in a post-judgment and post-appeal collection stage." That is true, for *Tunley* did not involve such a situation,[5] but Northwest's argument begs the question of whether there

---

4. We do not suggest that two litigants' interests must be perfectly aligned before a court may treat them as one "side" under Rule 42(c). Mundt's late entry into this case, however, precluded her from participating at all in the peremptory challenge that Ashbrook had exercised. In such circumstances, even a relatively minor divergence of interest makes it improper to treat two parties as one "side."

5. *Tunley* did not, in fact, involve an intervenor at all. *See Tunley v. Municipality of Anchorage Sch. Dist.,* 631 P.2d 67, 69–70 (Alaska 1981). A plaintiff in *Tunley* sought to change the judge to whom his case had been assigned after it was consolidated with another case. We analogized that plaintiff to an intervenor, noting the latter's right to change judges. *See id.* at 73 n. 11.

is any reason to find that the straightforward rule we quoted in *Tunley* should not apply when a party intervenes after judgment, instead of before judgment. To argue that it should not, Northwest notes that the annotation we cited in *Tunley* also says that

> [i]n some instances the right of an actual intervenor to apply for disqualification of a judge has been denied . . . [based on] the general doctrine that an intervenor must take the case as he finds it, or on such specific circumstances as that some aspects of the litigation were judicially heard [before] intervention.

Agabin, *supra*, at 1114.

Northwest claims that, given the judgment against Ashbrook, this case is in a ministerial "judgment-enforcement stage" and not truly "pending" and "before trial" within the spirit of Rule 42(c). It further claims that, because Mundt knew of the litigation long before she intervened, she should have done so sooner to protect her interests, and now must take the case as she finds it.[6]

Northwest does not, however, cite any authority for its theory that intervenors should not be able to change judges if they enter a case in a post-judgment stage. To the extent that it suggests a general rule of law that an intervenor's right to change judges depends on the stage of litigation, its claim is unfounded. To the extent it asks us to apply the annotation's comment, whose validity we doubt,[7] and find that Mundt's "specific circumstances" disentitle her to change judges, its argument is unpersuasive.

Mundt stresses that she

does not seek to relitigate [matters decided] by Judge Savell. [Her] interest in intervening was triggered by the [1995] post-judgment Order . . . [which] went outside the scope of the [1992] judgment [finding the settlement agreement between Ashbrook and Northwest enforceable] inasmuch as it divested Mundt of title to property in which Northwest has no interest and to . . . property not within the scope of the litigation.

In *Mundt I*, we held that Mundt had a right to intervene so that she could, as her petition reiterates, protect *her* ownership interest in the disputed parcels, not relitigate the judgment that enforces the agreement allocating rights and duties between Ashbrook and Northwest. She could not have intervened to protect her interests until after the superior court had entered a quiet-title order that, if her version of the facts is true, exceeds the scope of the 1992 judgment and imperils those interests. She is as much entitled to challenge the judge who will resolve her claim, and decide whether her version of the facts is indeed true, as is any other litigant.

> 3. *Mundt's right to change judges does not depend on balancing her interests against those of Northwest or of the court system.*

■ Northwest's third argument overlaps its claim that the "specific circumstances" of the case disentitle Mundt to change judges. It argues that the prejudice to it, and the loss to the judicial system of Judge Savell's experience with the case, outweigh Mundt's interest in a change of judge. The right to

---

**6.** Northwest contrasts Mundt with the intervenor whom we found entitled to change judges in *Barber v. Barber*, 915 P.2d 1204, 1208 (Alaska 1996). Northwest notes that, unlike Mundt, Barber had not had notice of the litigation or tried to appear in it before he intervened. This argument is off-point, for we noted those facts in *Barber* in regard to an issue not involved here—to wit, whether Barber had, under Civil Rule 42(c)(4), waived his right to a change by knowingly appearing before the current judge.

**7.** The annotation cited but one relevant holding, and two distinguishable ones, to support this comment. *See* P.A. Agabin, Annotation, *Intervenor's Right to Disqualify Judge*, 92 A.L.R.2d 1110, 1114 (1963) (citing *Harms v. Coors*, 50 N.M. 12, 167 P.2d 353 (1946) (holding that inter-

venors cannot change judge); *Lane v. Ferguson*, 62 Ariz. 184, 156 P.2d 236 (1945) (holding that party *seeking* to intervene cannot challenge judge *before* intervention granted); and *State ex rel. Lebeck v. Chavez*, 45 N.M. 161, 113 P.2d 179 (1941) (same as *Lane* )). Updates to the annotation, and our research, show that no court has since cited *Harms* or otherwise held that an intervenor could not change judges. Nevada's Supreme Court expressly rejected *Harms* in adopting a rule that an intervenor has the same right to disqualify a judge as any other party. *See State ex rel. Moore v. Fourth Jud'l Dist. Ct.*, 77 Nev. 357, 364 P.2d 1073, 1076–77 (1961) (following *City of San Diego v. Andrews*, 195 Cal. 111, 231 P. 726, 728 (1924)).

change judges, however, does not depend on an absence of prejudice to other parties or the judicial system. For a party like Mundt who meets the requirements of Rule 42(c), the right is just that—a right, not an interest subject to balancing.[8]

To the extent that Northwest fears having to relitigate issues already decided, its recourse is to show the new judge that Judge Savell has already decided any issues that Mundt tries to reopen. The court can readily dismiss any attempt to relitigate issues as barred by the law of the case, or beyond the scope of Mundt's intervention. Any change of judge may cause delay as a new judge learns a case, but the legislature and this court have promulgated clear directives requiring that delay. And any party—original or intervening—may cause a prevailing party like Northwest the delay and expense of having to show that an adversary is trying to relitigate settled issues.[9] Northwest suggests that the result of combining those two typical risks—i.e., the *extra* delay and expense of demonstrating *to a new judge* that an adversary is trying to relitigate issues settled by the prior judge—requires an exception to Rule 42(c). Its arguments, however, do not convince us that a straightforward application of the rule yields so extreme or absurd a result in this case as to require us to bend the plain language of the rule.

## IV. CONCLUSION

We REVERSE the superior court's order declining to change judges and REMAND for proceedings consistent with this opinion.

---

8. Rule 42(c)'s title, "Change of Judge as a Matter of Right," and its requirement that a party call its pleading a "notice" (not a "motion") and "neither specify grounds nor [attach] an affidavit" make clear that a change is automatic, not subject to a balancing inquiry, if the rule's requirements are met.

9. *See, e.g., Ashbrook v. Northwest Explor., Inc.*, Mem. Op. & J. No. 776 at 5–6 (Alaska, May 10, 1995) (involving original party Ashbrook's attempt to relitigate issues).