David SHERBAHN & Spenard Builders Supply, Appellants,

v.

Gregory J. KERKOVE, Appellee.

No. S–8222.

Supreme Court of Alaska.

Sept. 17, 1999.

Maryanne Boreen, Ingaldson Maassen, P.C., Anchorage, for Appellants.

Rebecca J. Hozubin, Law Offices of George M. Kapolchok, Anchorage, for Appellee.

Before MATTHEWS, Chief Justice, EASTAUGH, FABE, BRYNER, and CARPENETI, Justices.

## OPINION

FABE, Justice.

### I. *INTRODUCTION*

Gregory Kerkove sued David Sherbahn and Sherbahn's employer, Spenard Builders Supply (SBS), for negligence arising out of an automobile accident. At trial, the jury awarded $25,000 in past and future damages

to Kerkove. Because this award exceeded Kerkove's pre-trial offer of judgment, the superior court's judgment included enhanced prejudgment interest from the date of injury. The court also awarded enhanced post-judgment interest. Sherbahn and SBS appeal, arguing that the superior court erred in (1) denying their motion for a directed verdict because the evidence did not support the jury's award of future medical expenses, (2) failing to reduce the future medical expenses to present value, (3) computing prejudgment interest from the date of injury, and (4) enhancing postjudgment interest.

Because the evidence supports the jury's award of future medical expenses, we affirm the superior court's denial of the motion for a directed verdict. We also conclude that the trial court correctly refused to reduce the future medical expenses to present value and properly computed prejudgment interest from the date of injury. But the trial court erred in enhancing postjudgment interest. Thus, we reverse and remand on that limited issue.

## II. *FACTS AND PROCEEDINGS*

On April 14, 1994, David Sherbahn and Gregory Kerkove were involved in a car accident at the intersection of Post Road and Viking Drive in Anchorage. Kerkove sued Sherbahn and Sherbahn's employer, Spenard Builders Supply (SBS). Before trial, Kerkove offered to settle the dispute for $30,000, inclusive of costs, interest, and attorney's fees. Sherbahn and SBS rejected the offer.

Although Sherbahn and SBS initially denied liability, in opening statement at trial they conceded that Sherbahn was negligent and that his negligence was a legal cause of the accident. Accordingly, the trial primarily addressed the issues of damages and Kerkove's comparative fault.

In addition to past economic and non-economic damages, Kerkove sought compensation for future medical treatment and future non-economic loss, including pain and suffering. To support his claim for future medical bills, Kerkove testified that he continued to experience neck pain and occasional headaches. His treating chiropractor, Dr. Edward Barrington, referred him in the fall of 1994 to Dr. Glenn Ferris for an evaluation and possible treatment because Kerkove was no longer responding to Dr. Barrington's mode of treatment. After examining Kerkove, Dr. Ferris reported:

> Because he is doing so well, I am providing him with an anti-inflammatory to assist in the final stages of recovery and am sending him back for further chiropractic management. Quite possibly, the anti-inflammatory combined with his chiropractic management will be adequate to restore him to his pre-injury status. In the event that we are unsuccessful in gaining full recovery within the next couple of weeks, trigger-point injections with a concomitant physical therapy protocol will be considered.

But Kerkove claims that he never underwent the trigger-point injection treatment because he could not afford its estimated cost of $8,000–$15,000.

After the parties had presented all of their evidence, Sherbahn and SBS moved for a directed verdict on Kerkove's future economic and non-economic loss:

> [T]he medical records themselves indicate that he ... resolved [his] pains, and the pains he's left with, as he himself has described, are pains similar to what he had before the accident. There's been no testimony that he received enhanced and permanent injuries at all from this accident, no testimony in front of the Court to support that finding for the jury, so they would in fact be required to speculate as to awarding any such damages.

The court denied the motion.

Although the jury found that Kerkove was comparatively negligent, it concluded that his negligence was not a legal cause of his injuries. The jury awarded Kerkove $5,000 for past economic loss (medical bills), $5,000 for past non-economic loss (pain and suffering), and $15,000 for future economic loss (cost of medical treatment).

Because the jury award exceeded the offer of judgment that Kerkove had made earlier in the litigation, Kerkove moved to enhance the rate of prejudgment interest under former Alaska Civil Rule 68 and former AS

09.30.065. Sherbahn and SBS opposed the motion, claiming that Kerkove was not entitled to an enhanced interest rate on his damage award because Rule 68 does not cover a joint offer of judgment, and filed a notice to reduce the future economic damage award to its present value.

The superior court entered final judgment on June 3, 1997. The court's judgment included past economic loss of $5,000 and past non-economic loss of $5,000, both bearing enhanced prejudgment interest of 15.5% from April 14, 1994—the date of the accident—and future economic loss of $15,000, bearing enhanced postjudgment interest of 15.5% from March 6, 1997—the date of the jury verdict. Sherbahn and SBS appeal.

## III. DISCUSSION

### A. Standard of Review

■ When reviewing a motion for a directed verdict, we "determine whether the evidence, when viewed in the light most favorable to the non-moving party, is such that reasonable [persons] could not differ in their judgment.... [I]f there is room for diversity of opinion among reasonable people, the question is one for the jury." [1]

■ On questions of law, such as the application of the prejudgment interest statute or Civil Rule 68, we exercise our independent judgment.[2] When reviewing de novo, we will adopt the rule of law that is most persuasive in light of precedent, reason, and

policy.[3] Moreover, at what point prejudgment interest begins to accrue is a question of law subject to this court's independent judgment.[4]

### B. The Superior Court Properly Denied Sherbahn's Motion for a Directed Verdict.

■ At the close of evidence, Sherbahn and SBS moved for a directed verdict on the issue of future damages. The superior court denied the motion.[5] On appeal, Sherbahn and SBS again argue that the evidence did not support the jury's award. They claim that Kerkove's submission of Dr. Ferris's report, which stated that Dr. Ferris would "consider" trigger-point injections if anti-inflammatory treatment did not work, was insufficient to allow the jury to award damages for future medical treatment. Kerkove responds that his own testimony, the testimony of his treating doctor, and Dr. Ferris's report are sufficient to support an award of future medical expenses.

■ To establish a claim for future medical expenses, a plaintiff must prove two elements. First, the plaintiff must prove the *fact* of damages by a preponderance of the evidence.[6] "To recover for future medical expenses one must prove to a reasonable probability that they will occur." [7] Second, the plaintiff must prove the *amount* of damages with a degree of certainty that allows the finder of fact to "reasonably estimate the amount to be allowed for [the] item [of damages]." [8] Both the fact and the amount of

---

1. *Petersen v. Mutual Life Ins. Co.*, 803 P.2d 406, 410 (Alaska 1990); *see also Ben Lomond, Inc. v. Schwartz*, 915 P.2d 632, 635 (Alaska 1996).

2. *See McConkey v. Hart*, 930 P.2d 402, 404 (Alaska 1996).

3. *See Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

4. *See Johnson v. Olympic Liquidating Trust*, 953 P.2d 494, 497 (Alaska 1998); *Rice v. Denley*, 944 P.2d 497, 501 (Alaska 1997).

5. Although a party who moves for a directed verdict ordinarily moves for a judgment notwithstanding the verdict (JNOV) after the jury returns the verdict, Sherbahn and SBS did not do so. While a party does not preserve a denial of a motion for JNOV for appeal unless the party

moved for a directed verdict at the close of evidence, *see Richey v. Oen*, 824 P.2d 1371, 1374 (Alaska 1992), a party is not required to move for a JNOV to preserve a denial of a directed verdict. In fact, a motion for a directed verdict merely provides a moving party with the option of moving for a JNOV. *See* Alaska R. Civ. P. 50(b) ("[A] party who has moved for a directed verdict *may* move to have the verdict and any judgment entered thereon set aside ...." (emphasis added)).

6. *See Pluid v. B.K.*, 948 P.2d 981, 984 (Alaska 1997); *Blumenshine v. Baptiste*, 869 P.2d 470, 473 (Alaska 1994).

7. *Pluid*, 948 P.2d at 984 (quoting *Blumenshine*, 869 P.2d at 473).

8. *Id.* (alterations in original), quoting *Blumenshine*, 869 P.2d at 473.

damages can be proved by evidence of the type of treatment, the costs of treatment, the nature and duration of any hospitalization, resulting pain and suffering, and the length of any period of disability flowing from medical procedures.[9]

Sherbahn and SBS rely on *Blumenshine v. Baptiste*[10] to support their argument that Kerkove's evidence was insufficient to support an award of future medical expenses. In *Blumenshine,* the trial court set aside the jury's award of future medical expenses after a motion for a judgment notwithstanding the verdict (JNOV).[11] After he completed a pain management program, Baptiste's pain and rehabilitation center concluded that he did not need any further medical care. And although a different physician had suggested cortisone treatment, the plaintiff neither stated that he wished to undertake the treatment nor established what the treatment would cost. We concluded that the plaintiff failed to prove future medical expenses to a reasonable certainty and affirmed the trial court's grant of the JNOV.[12]

■ In contrast, the evidence in this case supports the requested damages. Kerkove's chiropractor, Dr. Barrington, testified that he referred Kerkove to Dr. Ferris for an evaluation and possible trigger-point injection therapy. Although Dr. Barrington did not fully agree with Dr. Ferris's diagnosis and had doubts about the effectiveness of the proposed treatment, he recommended that Kerkove try the alternative treatment recommended by Dr. Ferris because traditional methods of treatment were no longer beneficial to Kerkove. Kerkove also testified that he would pursue the trigger-point injection treatment if he could afford it. Thus, Ker-

kove proved to a reasonable certainty that he would incur future medical expenses.

Sherbahn and SBS also claim that Kerkove should have presented Dr. Ferris's expert testimony to support Kerkove's claim that he would need cortisone injections in the future. They rely on *Houger v. Houger,*[13] in which we noted that "[i]f a question of the nature or character of appellee's injuries were involved, some special skill [is] needed, and expert testimony by someone qualified in medical science [is] required."[14] But Kerkove's chiropractor, an expert with special knowledge, did testify as to the character and nature of Kerkove's injuries and outlined the contents and recommendations of Dr. Ferris's report. Thus, Dr. Ferris's testimony was not necessary for the jury to determine the fact of future medical damages.

Sherbahn and SBS next contend that Kerkove's statement that he believed that the injection treatment would cost $8,000 to $15,000 was insufficient to prove the amount of damages. They maintain that the statement is hearsay and that "only Dr. Ferris or someone from the Alaska Spine Institute was qualified to testify as to the cost of the procedure."

■ Even if the statement were hearsay, Sherbahn and SBS waived any objection to its admission as evidence. When Kerkove testified about the cost of the treatment at trial, Sherbahn and SBS did not object to it. If a party fails to object to the admission of evidence, the party has waived the objection.[15] Because Sherbahn and SBS waived any objection to Kerkove's statement about the cost of treatment, we will not consider this argument on appeal.

■ Moreover, while the jury may not "speculate or guess in making allowance for future medical expenses,"[16] Kerkove only

9. *See City of Fairbanks v. Nesbett,* 432 P.2d 607, 618 (Alaska 1967).

10. 869 P.2d 470 (Alaska 1994).

11. *See id.* at 473.

12. *See id.* In *Blumenshine,* we used the terms "reasonable certainty" and "reasonable probability" interchangeably. Although "reasonable certainty" sounds more demanding than "reasonable probability," it is intended to have an identical meaning.

13. 449 P.2d 766 (Alaska 1969).

14. *Id.* at 769.

15. *See* Alaska R. Evid. 103(a)(1); *Gilbert v. State,* 598 P.2d 87, 92 (Alaska 1979) ("[T]he basic rule is that failure to object to offered evidence waives the objection.").

16. *Blumenshine,* 869 P.2d at 473 (citation and quotation omitted).

needed to provide "some data ... upon which [the jury] might reasonably estimate the amount" of his future medical costs.[17] And the jury, which is responsible for weighing the credibility of witnesses and the reliability of evidence, apparently accepted Kerkove's estimate. Thus, the jury had "some data" on which to base its award.

After reviewing all of the evidence, we conclude that Kerkove presented sufficient evidence to support his claim for future economic damages. Accordingly, the superior court correctly denied the motion for a directed verdict.

### C. The Superior Court Correctly Refused to Reduce the Award of Future Medical Expenses to Present Value.

Sherbahn and SBS next argue that even if the evidence supported the jury's award of future medical expenses, the superior court should have reduced it to present value under AS 09.17.040(b). They contend that the $15,000 award should have been reduced to $5,535.06, based upon Kerkove's remaining life expectancy of thirty-six years. Kerkove counters that the reduction of the jury's award in this manner would lead to an "absurd" result because he "intend[s] to use the entire amount of money within a very short period of time."[18]

Alaska Statute 09.17.040 provides that the fact finder must reduce future economic losses to present value:

> (b) The fact finder shall reduce future economic damages to present value. In computing the portion of a lump-sum award that is attributable to future economic loss, the fact finder shall determine the present amount that, if invested at long-term future interest rates in the best and safest investments, will produce over

the life expectancy of the injured party the amount necessary to compensate the injured party for

> . . . .
>
> (2) the amount of money necessary during future years to provide for all additional economic losses related to the injury, taking into account future anticipated inflation.
>
> (c) Subsection (b) of this section does not apply to future economic damages if the parties *agree* that the award of future damages may be computed under the rule adopted in the case of *Beaulieu v. Elliott*, 434 P.2d 665 (Alaska 1967).

We agree with Sherbahn and SBS that AS 09.17.040 contemplates the reduction of future medical expenses to present value. But we believe that application of the statute in cases such as this one would lead to a result that the legislature did not envision.

"Interpretation of a statute begins with an examination of its language construed in light of its purpose."[19] In *Beaulieu v. Elliott*,[20] we held that the trier of fact should be permitted "to compute loss of future earnings without reduction to present value."[21] The legislature then reversed the *Beaulieu* rule by enacting AS 09.17.040:

> [T]he clear purpose of [AS 09.17.040] was to bring Alaska in line with other states which reduce future economic awards to present value and to reverse the rule we established [in *Beaulieu*] that the trier of fact should be allowed to compute loss of future earnings without reduction to present value.[22]

The plain language of subsection (b) does not specifically designate the categories of damages that must be reduced to present value.

---

17. *Id.* (citation and quotation omitted).

18. Kerkove also argues that the jury, not the judge, is the appropriate entity to reduce the damage award to present value because AS 09.17.040(b) states that "[t]he *fact finder* shall reduce" future damages to present value. (Emphasis added.) But, according to Kerkove, the parties agreed to defer the reduction issue until after the jury had rendered its verdict. Because of this understanding, Kerkove cannot rely on this procedural argument.

19. *Beck v. State, Dep't of Transp. & Pub. Facilities,* 837 P.2d 105, 116–17 (Alaska 1992).

20. 434 P.2d 665 (Alaska 1967); *see also Beck,* 837 P.2d at 117 (reaffirming the holding of *Beaulieu*).

21. *Id.* at 671.

22. *Beck,* 837 P.2d at 117 (footnote omitted).

But in discussing this issue prior to passage of AS 09.17.040, members of the judiciary committee commented that "[t]he Alaska Supreme Court has not indicated specifically whether future medical expenses should be reduced to present value, but it would appear that the same analysis relating to loss of earning capacity would apply." [23] Thus, by enacting AS 09.17.040, the legislature appears to have intended that the trier of fact reduce all future economic damages to present value. [24]

Nevertheless, Kerkove points to the purpose of the statute to support his argument that AS 09.17.040 does not require reduction of the award in this case. [25] We recognized in *Beaulieu v. Elliott* that the general purpose of reducing future damages to present value in tort cases is to prevent a plaintiff, through investments, from being placed in a better position than he or she would have occupied but for the defendant's tort. [26] But because he would already have undergone the injection treatment had he been able to afford it and intends to use the money for trigger-point injections as soon as possible, Kerkove posits that the award should not be computed over his remaining thirty-six-year expectancy. We agree.

In ascertaining the legislature's intent, we are obliged to avoid construing a statute in a way that leads to a glaringly absurd result. [27] The legislature intended that the sum remaining after reduction to present value would provide a plaintiff with "the amount of money necessary during future years to provide for all additional economic losses related to the injury." [28] Reducing the $15,000 award for trigger-point injections to present value over Kerkove's full life expectancy would lead to an absurd result because Kerkove would be left with only a third of the money he needs to obtain the intended treatment. By Sherbahn and SBS's computation, Kerkove would not have the full amount necessary for treatment until after he has invested it for thirty-six years. As we commented in *Beaulieu*, the purpose of reducing future damages is to avoid overcompensating a plaintiff for future loss. [29] In cases such as this, where the plaintiff will be using the entire award for medical treatment almost immediately, the danger of overcompensation is not present.

Because Kerkove testified that he would already have undergone Dr. Ferris's treatment had he been financially able and because the jury awarded him only the amount necessary to undergo that particular treatment at this time, any reduction of the future damage award would not serve the statute's

---

**23.** Committee Substitute for Sponsor Substitute for House Bill 532, 14th Leg., 1st Sess., Cmt. (1986).

**24.** In an earlier draft of AS 09.17.900, the legislature defined the term "future damages" as including "damages for future medical treatment, care or custody, loss of future earnings, or loss of bodily function of the claimant." Committee Substitute for Sponsor Substitute for House Bill (C.S.S.S.H.B.) 532, 14th Leg., 1st Sess. (Tent. Draft 1986). Although the legislature did not include this precise definition in the final draft, its exclusion appears to be because it restructured the entire chapter on civil damages. *See generally* Ch. 139, SLA 1986.

**25.** Under subsection (c), the requirement that future costs be reduced to present value does not apply to future economic damages if the parties agree that the *Beaulieu* rule governs the award. *See, e.g., McConkey v. Hart*, 930 P.2d 402, 404 n. 1 (Alaska 1996) (parties stipulated that future damages would not be discounted to present value). Both Kerkove and Sherbahn and SBS admit that they discussed the matter off record with the trial court. But the parties disagree over what agreement they reached. Sherbahn

and SBS maintain that the parties agreed that if the jury awarded future damages, the award would be reduced to present value after the trial. Kerkove asserts that the parties agreed to proceed under the *Beaulieu* rule if reduction to present value was appropriate. Precisely because subsection (b) applies unless there is an agreement otherwise and because Kerkove and Sherbahn and SBS disagree over the rule to be applied, subsection (b) remains the proper rule.

**26.** *See Beaulieu*, 434 P.2d at 671.

**27.** *Underwater Constr., Inc. v. Shirley*, 884 P.2d 150, 155 n. 21 (Alaska 1994) quoting *Sherman v. Holiday Constr. Co.*, 435 P.2d 16, 19 (Alaska 1967) (citation omitted); *see Mundt v. Northwest Explorations, Inc.*, 963 P.2d 265, 270 (Alaska 1998) (suggesting that if "a straightforward application of [a statute] yields so extreme or absurd a result," courts may justifiably "bend the plain language of the [statute]").

**28.** AS 09.17.040(b)(2).

**29.** *See Beaulieu*, 434 P.2d at 671.

purpose. Thus, we affirm the trial court's refusal to reduce the award for future medical expenses to present value.

### D. The Superior Court Properly Computed Prejudgment Interest on Past Economic Loss from the Date of the Injury.

In its final judgment the trial court awarded Kerkove $5,000 in past economic loss for medical expenses, bearing interest from the date of the accident, April 14, 1994. Although this award did not include the $3,300 in medical bills that Sherbahn and SBS had already paid, Sherbahn and SBS contend that the superior court should have computed prejudgment interest on the $5,000 award from December 2, 1994, the date that they stopped paying Kerkove's medical bills, rather than April 14, 1994, the date of the accident.

Alaska Statute 09.30.070(b) provides that prejudgment interest accrues from the day the defendant is served or receives written notice of a claim:

> Except when the court finds that the parties have agreed otherwise, *prejudgment interest accrues from* the day process is served on the defendant or *the day the defendant received written notification that an injury has occurred* and that a claim may be brought against the defendant for that injury, whichever is earlier. The written notification must be of a nature that would lead a prudent person to believe that a claim will be made against the person receiving the notification, for personal injury, death, or damage to property.

We have held that proof of actual notice can satisfy a statutory requirement of written notice.[30]

Sherbahn and SBS do not contest that the date of notice of the claim was the date of the accident, April 14, 1994. Indeed, they paid Kerkove's medical expenses from the date of the accident to December 2, 1994. Instead, Sherbahn and SBS are requesting that we recognize an exception to the rule that prejudgment interest accrues from the date of actual notice of the injury. They argue that when defendants have paid medical expenses, prejudgment interest should not begin to run until the payments stop, even if the jury does not include the payments in the verdict.[31]

Allowing an exception for the accrual date in this case would violate the statutory rule's purpose of simplicity. The bright-line rule of written notice streamlines and simplifies the task of choosing the commencement date for prejudgment interest. If we recognized the exception urged by SBS and Sherbahn in this case, other defendants could be entitled to several stop and start dates when calculating prejudgment interest. For example, a defendant might pay medical expenses from February to March, decline to pay from March to June, and then resume payment from July until the time of trial. A trial court would then be faced with calculating prejudgment interest from several commencement dates, frustrating the statute's purpose of simplicity. We thus decline to recognize an exception allowing a different commencement date for the computation of prejudgment interest in this case.

### E. It Was Error to Apply the Enhanced Interest Provision to Postjudgment Interest.

Before trial, Kerkove made an offer of judgment for $30,000, inclusive of costs,

---

**30.** *See McConkey v. Hart*, 930 P.2d 402, 404 (Alaska 1996).

**31.** If the jury's award had included the $3,300 of bills that Sherbahn and SBS had already paid, any award of prejudgment interest on that amount would have been error. But the jury's award of the requested $5,000 past economic damages did not include the medical bills that Sherbahn and SBS paid. When they first filed a prejudgment computation with the court, Sherbahn and SBS calculated prejudgment interest based on the understanding that the $5,000 award for past economic loss should be reduced

by the $3,184.63 they paid up to December 2, 1994. In response, Kerkove opposed any reduction of the award of past medical bills. He argued that when he requested past medical costs of $5,000 at trial, he based it on the amount incurred *after* crediting Sherbahn and SBS with their medical payments. The jury award thus did not include those payments. Apparently accepting Kerkove's argument, the trial judge declined to reduce the award for past economic loss by the amount of the medical payments. Sherbahn and SBS have not challenged this ruling on appeal.

interest, and attorney's fees. Sherbahn and SBS did not accept the offer. The jury awarded $25,000, which exceeded the offer when the court factored in costs, interest, and attorney's fees under the formula articulated in *Farnsworth v. Steiner*.[32]

In its final judgment the superior court applied the enhanced interest rate to past economic and non-economic damages as well as the future economic loss "until paid." Sherbahn and SBS contend that the superior court erred in applying the enhanced interest provisions of former Rule 68 and former AS 09.30.065 to postjudgment interest because the provisions only allow a court to enhance the interest rate up to the date of final judgment. We agree.

Former Alaska Rule of Civil Procedure 68 provides that if a defendant refused an offer of settlement that was more favorable than the final judgment, a court should enhance the rate of prejudgment interest up to the date of final judgment:

(b) If the judgment finally rendered by the court is not more favorable to the offeree than the offer, the prejudgment interest *accrued up to the date judgment is entered* shall be adjusted as follows:

. . . .

(2) if the offeree is the party defending against the claim, the interest rate will be increased by the amount specified in AS 09.30.065.[33]

(Emphasis added.) Former AS 09.30.065 specifies the amount of the rate increase:

If the judgment finally entered on the claim as to which an offer has been made under this section is not more favorable to the offeree than the offer, the interest awarded under AS 09.30.070 and *accrued up to the date judgment is entered* shall be adjusted as follows:

. . . .

(2) if the offeree is the party defending against the claim, the interest rate shall be increased by five percent a year.

(Emphasis added.)

Both former Rule 68 and former AS 09.30.065 state that only the interest "accrued up to the date judgment is entered shall be adjusted." Moreover, the purpose of the rule and statute is "to avoid protracted litigation" by encouraging parties to settle before trial.[34] This rationale no longer applies once a court enters final judgment after trial. Because the plain language of the rule and statute limit the enhanced interest rate to interest accrued before final judgment and because the legislative purpose is accomplished upon entry of final judgment, it was error to award an enhanced interest rate on damages "until paid."[35] We thus reverse and remand for entry of a judgment consistent with former Rule 68 and former AS 09.30.065.

## IV. CONCLUSION

Because the evidence supports the jury's award of future economic damages, we AFFIRM the superior court's denial of the motion for a directed verdict. We also AF-

---

**32.** 601 P.2d 266 (Alaska 1979). The *Farnsworth* case presented a detailed formula on how to compute whether the verdict exceeds the offer of judgment. *See id.* at 269–70 n. 4. Sherbahn and SBS do not dispute the *Farnsworth* calculation in this case.

**33.** The legislature has significantly amended both Rule 68 and AS 09.30.065. Because this cause of action arose in 1994, however, the new amendments do not affect this case. *See* ch. 26, § 55, SLA 1997.

**34.** *Continental Ins. Co. v. United States Fidelity & Guar. Co.*, 552 P.2d 1122, 1125–26 (Alaska 1976).

**35.** Kerkove argues that Sherbahn and SBS waived any objection to the enhancement of the postjudgment interest. As a general rule, this court will not consider an issue not raised in a

party's points on appeal. *See Winn v. Mannhalter*, 708 P.2d 444, 449 (Alaska 1985). Sherbahn and SBS did oppose the award of any enhanced interest at the trial level, but they failed to isolate their concerns about an enhanced postjudgment award, thus waiving the issue for appeal. Despite this waiver, we may still review the alleged error by the trial court under the plain error standard. *See McCubbins v. State, Dep't of Natural Resources, Div. of Parks and Recreation*, 973 P.2d 588, 592 n. 4 (Alaska 1999). Because, given the clear wording of the statute, a "high likelihood" exists that the trial court's error will result in a "miscarriage of justice," *Jaso v. McCarthy*, 923 P.2d 795, 800 (Alaska 1996) (quotations omitted), we address this error notwithstanding the waiver.

FIRM both the superior court's refusal to reduce the award of future medical expenses to present value and its award of prejudgment interest from the date of the injury. But we REVERSE and REMAND because the trial court erred in its award of enhanced postjudgment interest.