NOTICE

*The text of this opinion can be corrected before the opinion is published in the Pacific Reporter. Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.gov*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

|  |  |
|---|---|
| TESSA MICHAEL HILLYER,<br><br>                     Appellant,<br><br>          v.<br><br>STATE OF ALASKA,<br><br>                     Appellee. | Court of Appeals No. A-13901<br>Trial Court No. 4FA-21-00300 CR<br><br>**O P I N I O N**<br><br>No. 2760 — October 6, 2023 |

Appeal from the District Court, Fourth Judicial District, Fairbanks, Matthew Christian, Judge.

Appearances: Julia Bedell, Assistant Public Defender, and Samantha Cherot, Public Defender, Anchorage, for the Appellant. Donald Soderstrom, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Treg R. Taylor, Attorney General, Juneau, for the Appellee.

Before: Allard, Chief Judge, and Harbison and Terrell, Judges.

Judge ALLARD.

In 2007, the Alaska legislature amended AS 44.41.035, the statute governing Alaska's DNA identification registration system, to authorize collection of DNA samples from people who have been arrested for certain crimes, including "a

crime against a person."[1] A "crime against a person" is defined statutorily as "an offense, or an attempt or solicitation to commit an offense, under AS 11.41[.]"[2]

However, the statute also provides for an expungement procedure in cases where the charged offense does not end in a conviction. Alaska Statute 44.41.035(i) provides, in pertinent part, that "[t]he Department of Public Safety shall destroy the material in the system relating to a person or minor on the written request of the person or minor, if the request is accompanied by a certified copy of a court order making the written findings required by this subsection." The written findings required by the subsection include:

> (A) the person arrested was released without being charged;
>
> (B) the criminal complaint, indictment, presentment, or information for the offense for which the person was arrested was dismissed, and a criminal complaint, indictment, presentment, or information for an offense requiring submission of a DNA sample was not refiled; or
>
> (C) the person was found by the trier of fact to be not guilty of the offense for which the person was arrested and was not convicted of another offense requiring submission of a DNA sample under (b)(1) or (2) of this section.[3]

The current case involves a defendant, Tessa Michael Hillyer, who was arrested in Fairbanks and charged with fourth-degree assault and fourth-degree criminal mischief based on an altercation with her roommate.[4] Hillyer subsequently pleaded guilty, pursuant to a plea agreement, to a reduced charge of disorderly conduct.[5]

---

[1] SLA 2007, ch. 24, § 32.

[2] AS 44.41.035(s)(2).

[3] AS 44.41.035(i)(2)(A)-(C).

[4] AS 11.41.230 and AS 11.46.484(a)(1), respectively.

[5] AS 11.61.110(a)(6).

Pursuant to the plea agreement, the State dismissed the criminal mischief charge and amended the assault charge, replacing it with the disorderly conduct charge to which Hillyer pleaded.

Following her sentencing, Hillyer requested that the district court issue an order establishing that the "crime against a person" (with which she had originally been charged) was dismissed so that the Department of Public Safety would destroy the DNA sample that had been collected pursuant to AS 44.41.035(b)(6).

The State initially opposed this request in the trial court proceedings, arguing that the assault charge had been "reduced" not "dismissed." The district court agreed with this reasoning and refused to issue the requested order. Hillyer appealed.

On appeal, the State now concedes that there is no functional difference, for purposes of the DNA registration statute, between the State reducing the assault charge to disorderly conduct and the State dismissing the assault charge and filing a new complaint charging disorderly conduct.[6] In other words, the State agrees that when a criminal complaint is amended so that it no longer alleges that the defendant committed an offense requiring submission of a DNA sample, the requirements of AS 44.41.035(i)(2)(B) are met. We have reviewed the relevant legislative history and we agree that the State's concession is well-founded.[7]

However, the State raises a new objection on appeal that we must address. The State argues that the district court and this Court lack subject matter jurisdiction in this matter because Hillyer's request for an order under AS 44.41.035(i) is "collateral" to her criminal case. For the reasons explained here, we disagree.

---

[6]     *See Sherbahn v. Kerkove*, 987 P.2d 195, 201 (Alaska 1999) ("In ascertaining the legislature's intent, we are obliged to avoid construing a statute in a way that leads to a glaringly absurd result.").

[7]     *See Marks v. State*, 496 P.2d 66, 67-68 (Alaska 1972) (requiring an appellate court to independently assess whether a concession of error "is supported by the record on appeal and has legal foundation").

*Why we conclude that this Court has jurisdiction*

The State argues that neither the district court nor this Court has jurisdiction over this case. We begin by explaining why this Court has jurisdiction to decide this appeal.

Whether a court has subject matter jurisdiction is a question of law that we review *de novo*.[8] As the State points out, the legislature created this Court as one of limited subject matter jurisdiction.[9] When the legislature created this Court, it provided in AS 22.07.020(c) that we have appellate jurisdiction to review final decisions of the district court in criminal cases — more specifically, that we have jurisdiction to review "a final decision of the district court in an action or proceeding involving criminal prosecution, post-conviction relief, extradition, probation and parole, habeas corpus, or bail."[10]

The State now argues that we lack jurisdiction under this provision because the district court itself lacks jurisdiction to issue a DNA expungement order in a closed criminal case. As we will soon discuss in more detail, the State is incorrect that the district court lacks jurisdiction to issue an expungement order. But even assuming this were true, this Court would still have jurisdiction to review the district court's denial of Hillyer's request in this case.

As this Court has previously explained, our jurisdictional statute "describes our jurisdiction in terms of the *types of litigation* that might give rise to an appeal, rather than in terms of the types of legal issues that we might have to decide."[11]

---

[8] *See McCaffery v. Green*, 931 P.2d 407, 408 n.3 (Alaska 1997) ("Jurisdictional issues are questions of law subject to this court's independent judgment.").

[9] *See* AS 22.07.020(c) (defining Court of Appeals jurisdiction); *see also* AS 22.15.060 (defining district court criminal jurisdiction).

[10] SLA 1980, ch. 12, § 1.

[11] *Holden v. State*, 190 P.3d 725, 729 (Alaska App. 2008).

– 4 –

Of relevance here, we have jurisdiction over "a final decision of the district court in an action or proceeding involving criminal prosecution."[12] Here, there is no dispute that the district court's order was a "final decision" nor that it was issued in "an action or proceeding involving criminal prosecution." Instead, the dispute is whether the district court had jurisdiction to decide this issue. It is therefore clear that this Court has jurisdiction to hear this appeal. (Of course, were we to conclude that the district court lacked jurisdiction to issue the order requested by Hillyer, we would decline to reach the underlying question of whether Hillyer is entitled to that order. But that concerns a question of *how* to decide this appeal, not whether we have jurisdiction to do so.)

*Why we conclude the district court has jurisdiction to issue the order required by Alaska's expungement statute*

The State's primary argument in this appeal is that the district court lacks jurisdiction to issue the order required under AS 44.41.035(i). The State asserts that the district court, like this Court, was created by the legislature and is a court of limited subject matter jurisdiction; that the district court only has jurisdiction over a narrow subset of criminal proceedings (namely prosecutions for misdemeanors and violations); and that a request for expungement is not a criminal proceeding.[13] We reject this argument for two reasons.

First, contrary to the representations of both parties, AS 44.41.035(i) does not require a court to order injunctive relief against the Department of Public Safety. Rather, it merely requires the court to issue findings describing the result of a criminal proceeding it conducted.

Under AS 44.41.035(i), the Department of Public Safety is required to destroy DNA if it receives a request to do so and that request is accompanied by a court

---

[12] AS 22.07.020(c).

[13] *See* AS 22.15.060 (defining district court criminal jurisdiction).

order making certain required findings — namely, that the person was not convicted of the relevant charges (or that any such conviction was reversed), and that the person has not otherwise been convicted of a crime requiring a sample to be taken. The order in question need not actually "order" (*i.e.*, instruct) the Department of Public Safety to take any specific action.[14] Rather, the order must only "mak[e] the written findings required by [AS 44.41.035(i)]." It is the statute itself that requires action, providing that the Department of Public Safety "shall destroy the material in the system" upon receipt of an order containing such findings.

Given the minimal requirements of the order contemplated by AS 44.41.035(i), we question whether the issue presented here is truly one of subject matter jurisdiction at all. Subject matter jurisdiction refers to "the legal authority of a court to hear and decide a particular type of case."[15] But the order required by AS 44.41.035(i) does not require the court to "hear and decide" a case; it simply requires the court to issue findings describing the outcome of prior judicial proceedings.[16]

---

[14] *Compare* AS 44.41.035(i) ("The Department of Public Safety shall destroy the material in the system relating to a person or minor on the written request of the person or minor, if the request is accompanied by a certified copy of a court order making the written findings required by this subsection."), *with* N.Y. Exec. Law § 995-c(9)(a) (McKinney 2012) (providing that an "individual may apply to the court in which the judgment of conviction was originally entered for an order directing the expungement of any DNA record").

[15] *Nw. Med. Imaging, Inc. v. State, Dep't of Revenue*, 151 P.3d 434, 438 (Alaska 2006) (citing Erwin Chemerinsky, *Federal Jurisdiction*, at 257 (3d ed. 1999)).

[16] We note that an appropriate jurisdictional basis for the order required by AS 44.41.035(i) would be ancillary jurisdiction, which empowers "a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees" in those cases, like Hillyer's underlying criminal case in the district court, over which the court already has subject matter jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 379-80 (1994); *see also State v. Newcomb*, 869 P.2d 1193, 1194-95 (Alaska App. 1994) (discussing the doctrine of ancillary jurisdiction); *cf. U.S. v. Sumner*, 226 F.3d 1005, 1014-15 (9th Cir. 2000) (holding that federal district courts have ancillary

The second reason for concluding that the district court has jurisdiction to issue findings under AS 44.41.035(i) is that the legislative history makes clear that the legislature expected that these findings would be made by the court with jurisdiction over the defendant's criminal case. [17]

Alaska Statute 44.41.035, Alaska's DNA registration statute, was first enacted in 1995.[18] As originally enacted, the statute required DNA collection from persons convicted of a felony "crime against a person."[19] The statute also required DNA collection from minors who were sixteen or older and who were adjudicated as a delinquent for an act that would be a felony crime against a person if committed by an adult.[20] In other words, as originally enacted, the DNA registration statute only required collection of DNA samples from persons convicted in criminal cases or adjudicated delinquent in juvenile cases. The statute had a provision requiring the Department of Public Safety to destroy the DNA sample if the person's conviction or adjudication was reversed and the person was either (1) not retried or readjudicated for the crime; or (2) was acquitted after retrial or readjudication.[21]

---

jurisdiction to expunge criminal records when the underlying arrest or conviction was unlawful, or to correct a clerical error).

[17] *See Bowen v. State*, 533 P.3d 935, 937 (Alaska App. 2023) ("When we interpret a statute, we 'consider its language, its purpose, and its legislative history, in an attempt to give effect to the legislature's intent, with due regard for the meaning the statutory language conveys to others.'" (quoting *Cleveland v. State*, 241 P.3d 504, 506 (Alaska App. 2010))).

[18] SLA 1995, ch. 10, § 2.

[19] Former AS 44.41.035(b) (1995); *see also* former AS 44.41.035(j)(1) (1995) (defining "crime against a person" as "a felony offense, or a felony attempt to commit an offense, under AS 11.41, other than AS 11.41.320, or under AS 11.46.400").

[20] Former AS 44.41.035(b) (1995).

[21] Former AS 44.41.035(i) (1995) ("The Department of Public Safety shall destroy the material in the system relating to a person if (1) the conviction or adjudication that subjected the person to having a sample taken under this section is reversed; and (2) the

In 2000, the legislature amended the statute to require a court order before the Department of Public Safety could expunge a person's DNA sample.[22] Specifically, the language of AS 44.41.035(i) was amended as follows:

> The Department of Public Safety shall, *upon receipt of a court order*, destroy the material in the system relating to a person. *The court shall issue the order if it determines that*
>
> (1) the conviction or adjudication that subjected the person to having a sample taken under this section is reversed; and
>
> (2) the person
>
>> (A) is not retried or readjudicated for the crime; or
>>
>> (B) after retrial, is acquitted of the crime or after readjudication for the crime is not found to be a delinquent.[23]

This amendment was discussed at a House Judiciary Committee hearing on March 29, 2000. A representative from the Anchorage Police Department testified that the requirement of a court order was intended to remedy the lack of "a clear mechanism to remove a person's DNA from the registry" and would require a person to "pursue a court order in order to remove his DNA from the registry."[24]

Representative Eric Croft questioned why the burden should be shifted from the department to the person "who was just declared innocent of a crime."[25] The Department of Public Safety spokesperson, Deputy Commissioner Del Smith,

---

person (A) is not retried or readjudicated for the crime; or (B) after retrial, is acquitted of the crime or after readjudication for the crime is not found to be a delinquent.").

[22] SLA 2000, ch. 44, § 5.

[23] *Id.* (emphasis added).

[24] Minutes of House Judiciary Comm., House Bill 294, testimony of John McKinnon, Officer, Anchorage Police Dep't, Tape 00-42, Side A at 001 (Mar. 29, 2000).

[25] Minutes of House Judiciary Comm., House Bill 294, commentary of Representative Eric Croft, Tape 00-42, Side A at 157 (Mar. 29, 2000).

responded that the intent was to provide "a clearer path to get rid of a DNA sample."[26] He viewed the court order requirement as an "opportunity to ensure that it happens rather than as a creation of more difficulties for a former defendant."[27] The Anchorage Police Department spokesperson echoed the belief that the court order requirement was to provide a "clear path" to the person seeking to have their DNA expunged and Deputy Commissioner Smith emphasized that, while there "may be some inadvertent burden, . . . that is unintentional."[28]

The subject arose a second time at a House Judiciary Committee hearing on April 14, 2000. At that hearing, the Alaska Public Defender Agency's Deputy Director Blair McCune testified that the Agency was concerned about how people would obtain the court order.[29] He asked if a separate lawsuit would have to be filed and he questioned whether the criminal court would have jurisdiction to issue such an order.[30]

In response, Deputy Commissioner Smith testified that "he had never anticipated that someone would have to file [a law]suit" to get the court order.[31] He explained that the court order was needed to create "an audit trail" of why the DNA

---

[26] Minutes of House Judiciary Comm., House Bill 294, testimony of Del Smith, Deputy Comm'r, Dep't of Pub. Safety, Tape 00-42, Side A at 220 (Mar. 29, 2000).

[27] *Id.*

[28] Minutes of House Judiciary Comm., House Bill 294, testimony of John McKinnon, Officer, Anchorage Police Dep't, Tape 00-42, Side A at 299 (Mar. 29, 2000); Minutes of House Judiciary Comm., House Bill 294, testimony of Del Smith, Deputy Comm'r, Dep't of Pub. Safety, Tape 00-42, Side A at 434 (Mar. 29, 2000).

[29] Minutes of House Judiciary Comm., House Bill 294, testimony of Blair McCune, Deputy Dir., Alaska Pub. Def. Agency, Tape 00-61, Side A at 883 (Apr. 14, 2000).

[30] *Id.*

[31] Minutes of House Judiciary Comm., House Bill 294, testimony of Del Smith, Deputy Comm'r, Dep't of Pub. Safety, Tape 00-61, Side A at 1558 (Apr. 14, 2000).

sample was destroyed: "It is a way to keep everything above board."[32] He testified that he anticipated that "if an individual was found not guilty or the conviction was reversed, the individual would contact [the Department of Public Safety] or the district attorney and the authorities would ask the court to give the authorities an order to get rid of the DNA sample of that individual."[33] He opined that the individual whose DNA had been collected would be the most motivated to get this done but he had "never anticipated that there would be a requirement for civil litigation," which did not "make any sense" to him.[34] Chairman Pete Kott agreed that civil litigation to obtain the court order did not make any sense.[35]

The legislature also made a minor change to the statutory language adopting the court order requirement. The originally proposed language required the court order to be "at the request" of the person whose DNA had been collected.[36] But the legislature amended this language to delete the requirement that the court order be at the request of the person and instead just refer to "a court order."[37] Representative Croft spoke in approval of this change, emphasizing that the court order "should not be required at the request of a person but rather the court order should be part of a regular

---

[32]   *Id.*

[33]   *Id.*

[34]   *Id.*

[35]   Minutes of House Judiciary Comm., House Bill 294, commentary of Chairman Pete Kott, Tape 00-61, Side A at 1641 (Apr. 14, 2000).

[36]   *See* H.B. 294, 21st Leg., 2d Sess. (as introduced, Jan. 21, 2000).

[37]   *See* Minutes of House Judiciary Comm., House Bill 294, Adoption of Amendment 1, Tape 00-61, Side A at 1945, 2040 (Apr. 14, 2000); C.S.H.B. 294, 21st Leg., 2d Sess. (as offered by House Judiciary Comm., Apr. 15, 2000, and passed by Senate, Apr. 20, 2000); *see also* SLA 2000, ch. 44, § 5.

administrative process."[38] He proposed an arrangement "whereby the court would make a list each year of people who had been acquitted and have their records expunged."[39] No further discussion of the court order requirement occurred during the committee hearings.

In its briefing on appeal, the State argues that the legislative history is "ambiguous" with regard to whether the criminal courts were expected to have jurisdiction to issue the relevant court orders under AS 44.41.035(i). The State therefore argues that "[t]his ambiguous legislative history is not enough to create jurisdiction where it does not otherwise explicitly exist."

But, as the legislative history discussed above shows, the legislative intent was to make it *easier* rather than more difficult for a person to obtain expungement of their DNA sample if they qualified for expungement. The primary sponsors of the bill clearly envisioned that the court order would be simple to obtain and would *not* require the filing of a separate civil action. Although not directly stated, the assumption appears to have been that the criminal justice system would be providing these orders — hence the suggestion that the person could contact the district attorney's office to obtain the necessary court order from the court.[40]

The expectation that criminal defendants would obtain the necessary court orders through the criminal courts is also demonstrated by a comparison to related federal legislation. In 2010, the Alaska legislature amended AS 44.41.035(i) to its current form, which states, in pertinent part, that "[t]he Department of Public Safety shall destroy the material in the system relating to a person or minor on the written

---

[38] Minutes of House Judiciary Comm., House Bill 294, commentary of Representative Eric Croft, Tape 00-61, Side A at 2013 (Apr. 14, 2000).

[39] *Id.*

[40] *See* Minutes of House Judiciary Comm., House Bill 294, testimony of Del Smith, Deputy Comm'r, Dep't of Pub. Safety, Tape 00-61, Side A at 1558 (Apr. 14, 2000).

request of the person or minor, if the request is accompanied by a certified copy of a court order making the written findings required by this subsection."[41] The legislative history of this amendment indicates that it was added, in part, because the FBI required such a procedure in order for a state to submit samples to the national DNA database, CODIS (Combined DNA Index System).[42] The corresponding federal statute, 34 U.S.C. § 12592(d)(2), states, in pertinent part:

> (A) As a condition of access to the index described in subsection (a), a State shall promptly expunge from that index the DNA analysis of a person included in the index by that State if —
>
>> (i) the responsible agency or official of that State receives, for each conviction of the person of an offense on the basis of which that analysis was or could have been included in the index, *a certified copy of a final court order* establishing that such conviction has been overturned; or
>>
>> (ii) the person has not been convicted of an offense on the basis of which that analysis was or could have been included in the index, and the responsible agency or official of that State receives, for each charge against the person on the basis of which the analysis was or could have been included in the index, *a certified copy of a final court order* establishing that such charge has been dismissed or has resulted in an acquittal or that no charge was filed within the applicable time period.

---

[41]   SLA 2010, ch. 20, § 10.

[42]   Minutes of Senate Judiciary Comm., Senate Bill 110, testimony of Michelle Collins, DNA Unit Supervisor, Statewide Crime Lab'y, Dep't of Pub. Safety, 2:26-2:30 p.m. (Apr. 6, 2009).

(B) For purposes of subparagraph (A), a court order is not "final" if time remains for an appeal or application for discretionary review with respect to the order.[43]

Thus, the federal statute clearly contemplates that states will expunge a person's DNA sample upon receipt of a "certified copy" of "a final court order" in a criminal case, although the order is not considered final until the time for appeal or discretionary review has passed. Using orders from criminal courts in Alaska is therefore consistent with federal practice.

The State argues that the legislature could not have intended the orders needed to expunge DNA samples to come from the criminal courts because there will be circumstances where no criminal court case has been initiated — *e.g.*, when a person's DNA is collected based on an arrest that never develops into a criminal case. But, in the vast majority of cases, an arrest for a crime against a person will be followed by the initiation of a criminal court proceeding, even if the charges are ultimately dismissed. In any case, the fact that there may be persons who seek expungement of their DNA samples from the state system who do not have access to a criminal court does not mean that the criminal court should not be used to issue orders for those persons who do fall within their jurisdiction.

In the current case, Hillyer was arrested and charged with fourth-degree assault — a crime against a person for which her DNA was collectable. When the charge was reduced to disorderly conduct — a crime for which her DNA was not collectable — she was entitled to a court order establishing that the assault charge had been dismissed and she had not been convicted of, or charged with, any other crime for which her DNA would be collectable. Accordingly, it was error for the district court to deny her request for an order under AS 44.41.035(i).

---

43   34 U.S.C. § 12592(d)(2)(A)-(B) (emphasis added).

*Conclusion*

We REVERSE the district court's denial of Hillyer's request for a court order under AS 44.41.035(i) and we REMAND this case to the district court so that the court can issue an order with the appropriate findings.