*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| CITY OF VALDEZ, | ) | |
| | ) | Supreme Court No. S-18351 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-20-06106 CI |
| v. | ) | |
| | ) | O P I N I O N |
| PRINCE WILLIAM SOUND OIL | ) | |
| SPILL RESPONSE CORPORATION; | ) | No. 7694 – April 19, 2024 |
| STATE OF ALASKA, DEPARTMENT | ) | |
| OF REVENUE; and STATE | ) | |
| ASSESSMENT REVIEW BOARD, | ) | |
| | ) | |
| Appellees. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Yvonne Lamoureux, Judge.

Appearances: Robin O. Brena and Jon S. Wakeland, Brena, Bell & Walker, P.C., Anchorage, for Appellant. Leon T. Vance, Faulkner Banfield, P.C., Anchorage, and F. Steven Mahoney, Manley & Brautigam P.C., Anchorage, for Appellee Prince William Sound Oil Spill Response Corporation. Gracie E. Holden, Assistant Attorney General, Anchorage, and Treg R. Taylor, Attorney General, Juneau, for Appellee State of Alaska, Department of Revenue. Notice of nonparticipation filed by Jessica M. Alloway, Solicitor General, Anchorage, and Treg R. Taylor, Attorney General, Juneau, for Appellee State Assessment Review Board.

Before: Maassen, Chief Justice, and Carney, Borghesan, Henderson, and Pate, Justices.

BORGHESAN, Justice.

## I.    INTRODUCTION

Under Alaska's oil and gas property tax system, both the State and municipalities may levy taxes on property used for the pipeline transportation or production of gas or unrefined oil. The State has the exclusive authority to determine what property is taxable and to determine its value for tax purposes. But a municipality can appeal the State's determinations, just like a taxpayer can.

In this case the City of Valdez appealed the State's determination that certain property was not taxable. After administrative and court proceedings extending almost two decades, Valdez won. But because the litigation took so long, Valdez has not been able to collect taxes on the property that should have been taxed. Alaska's tax code provides that "the amount of a tax imposed by this title must be assessed within three years after the return was filed."[1] Applying this statute, the superior court ruled that even though the State wrongly determined certain property was not taxable, the State cannot now assess taxes on this property if more than three years have passed since the taxpayer filed its tax return. According to this ruling, taxes may be assessed on this property only for the most recent tax years.

Valdez appeals. It argues that this statute of limitations does not apply to oil and gas property taxes at all. In the alternative, Valdez argues that when a municipality successfully challenges the State's determination that property was not taxable, the limitations period does not bar the State from taxing the property no matter how many years have passed since the tax return was filed. According to Valdez, applying the statute of limitations in this scenario would negate a municipality's right to appeal the State's determinations because it is simply not possible to complete an appeal in less than three years.

---

[1]    AS 43.05.260(a).

But the statutory text is quite clear. And Valdez does not point to legislative history suggesting the legislature intended something other than the plain meaning of the text. Nor are we convinced that it is impossible for a municipality to challenge a taxability determination in less than three years. Administrative proceedings are highly expedited by statute, and there are mechanisms in the court rules for expedited judicial review as well. Finally, Valdez's interpretation would greatly undermine the core purpose of the statutory limitations period: to protect potential taxpayers from the uncertainty of perpetual tax liability. We therefore affirm the superior court's decision.

## II.    FACTS AND PROCEEDINGS

### A.    Statutory Framework

Alaska's oil and gas property tax statutes are codified in AS 43.56. To administer this tax, the legislature instructed the Department of Revenue (Revenue) to (1) determine whether oil and gas property is taxable and (2) assign a value to taxable property.[2]

Although Revenue has the exclusive responsibility to assess oil and gas property, both the State and the municipality in which the property is located may levy taxes based on those assessments.[3] If Revenue determines that oil and gas property is not taxable under AS 43.56, a municipality may instead tax that property via local

---

[2]    AS 43.56.060(a)-(b).

[3]    AS 43.56.010(b); AS 29.45.080. Property owners who pay taxes under AS 43.56 receive a credit for any taxes paid to a municipality. *See* AS 29.45.080; AS 43.56.010(b)-(d).

ordinance.[4]   In addition, both municipalities and taxpayers may appeal Revenue's taxability determination or valuation of property.[5]

According to AS 43.56, these appeals begin first with Revenue and then progress to a second level of review before the State Assessment Review Board (SARB).[6]   But for many years Revenue's regulations provided for two separate procedural tracks.   Under these regulations, a property owner or municipality challenging valuation appealed first to Revenue and then to SARB.[7]   But a party challenging taxability appealed first to Revenue and then to the Revenue Commissioner.[8]   In 2016 we rejected this dual-track scheme.[9]   We held that both taxability and valuation appeals must be adjudicated by SARB.[10]   After SARB issues its decision, a property owner or municipality may seek a de novo trial before the superior court[11] and appellate review in this court.[12]

---

[4]     1980 INFORMAL OP. ATT'Y GEN., 1980 WL 27822 (Aug. 8, 1980) (explaining that Revenue's decision that oil and gas property is not taxable under AS 43.56 permits municipalities to independently assess and tax that property).

[5]     AS 43.56.110-130; 15 Alaska Administrative Code (AAC) 56.020-030.

[6]     *See* AS 46.56.110-130.  SARB exists within the Department of Revenue. AS 43.56.040.  "The board consists of five persons appointed by the governor to serve at the pleasure of the governor, each of whom must be knowledgeable of assessment procedures.  Each board member is subject to confirmation by a majority of the members of the legislature in joint session." *Id.*

[7]     *See City of Valdez v. State* (*City of Valdez I*), 372 P.3d 240, 244 (Alaska 2016).

[8]     *Id.*

[9]     *Id.* at 243.

[10]     *Id.*

[11]     AS 43.56.130(i).

[12]     *See* AS 22.05.010 (giving supreme court final appellate jurisdiction in all actions and matters).

This process for appealing Revenue's tax decisions under AS 43.56 takes time, and that is what gives rise to the dispute in this case. There is a statute in the general provisions governing Alaska's tax statutes that limits Revenue's amount of time to assess taxes to three years after the return is filed.[13] The three-year limit does not apply when (1) the taxpayer has filed "a false or fraudulent return with the intent to evade tax"; (2) the taxpayer failed to file a return; or (3) both Revenue and the taxpayer consent in writing to an extension before the three-year limitation period expires.[14] Whether and how this statute applies in appeals under AS 43.56 are the core of the parties' dispute.

## B.    Underlying Facts

This appeal concerns the taxability of oil spill prevention and response vessels stationed at the Valdez Marine Terminal, the southern terminus of the Trans-Alaska Pipeline System. The Valdez Marine Terminal stores oil that has been transported through the pipeline until tankers carry that oil to refineries outside Alaska. The terminal is located within the City of Valdez, a municipality authorized to collect taxes assessed by Revenue under AS 43.56.010.

Alaska law requires terminals and tankers to implement an oil spill prevention and contingency plan.[15] Prince William Sound Oil Spill Response Corporation ("the Corporation") leases its vessels to the Alyeska Pipeline Service Company. Some of the Corporation's vessels are dedicated primarily to oil spill prevention and cleanup at the terminal, while others escort tankers through Prince William Sound.

---

[13]    AS 43.05.260(a).

[14]    *Id.* § (c)(1)-(3).

[15]    AS 46.04.030(a) (oil terminal facility) and (c) (tankers).

Before 1997 Revenue did not consider any of the Corporation's vessels to be taxable property under AS 43.56,[16] based on a "primary use" test defined in regulation.[17] In 1997 Revenue adopted a new methodology to determining primary use that made some, but not all, of the vessels taxable. Revenue included vessels required by the terminal's oil spill response plan in its definition of "taxable property" but excluded vessels not required by the plan and used primarily to escort tankers. In light of the new policy Revenue issued a supplemental assessment that listed some of the Corporation's vessels.

### C. Proceedings

**1. Beginning in 1997, Valdez appealed Revenue's determinations that certain vessels were not taxable under AS 43.56 for each tax year.**

Beginning with the 1997 supplemental assessment, Valdez appealed the validity of Revenue's "primary use" test and its determination that certain vessels were not taxable. Valdez has appealed this determination for each successive tax year, up until the present. These challenges have followed a circuitous path.

These proceedings began with Valdez appealing Revenue's December 1997 supplementary assessment and, later, its 1998 assessment. Valdez argued that Revenue had undervalued some property on the assessment roll and omitted other

---

[16] Property is taxable under AS 43.56 if it is used "primarily in the exploration for, production of, or pipeline transportation of gas or unrefined oil . . . or in the operation or maintenance of facilities used in the exploration for, production of, or pipeline transportation of gas or unrefined oil." AS 43.56.210(5)(A).

[17] 15 AAC 56.075(b)(1) (providing that oil and gas infrastructure is taxable under AS 43.56 only if property was "committed for use for an oil spill response, prevention, or recovery plan necessary to the pipeline transportation of gas or unrefined oil or to the operation or maintenance of a marine terminal or other facility used in the pipeline transportation of gas or unrefined oil" for "more than 50 percent of the property's total operational time during the preceding tax year").

taxable property altogether.  Revenue denied Valdez's appeals, and Valdez appealed these denials to SARB.

In May 1998 Valdez and Revenue stipulated to withdraw Valdez's two appeals from SARB.  The parties apparently agreed that SARB lacked jurisdiction over taxability determinations.  (Valdez would later change its position and ultimately obtain a ruling from us that SARB has jurisdiction to hear taxability determinations.)[18]

Later in 1998 Revenue revised its taxability policy, adding some oil spill response vessels that it had previously excluded.  Revenue then revised its 1997 supplementary assessment accordingly, but did not modify earlier years' assessments.

In 2000 Valdez filed an action in superior court seeking to have Revenue's new taxability policy applied to both previous and future tax years.  Valdez sought declaratory judgment that this policy applied to tax years 1974-1996; it sought an injunction applying this policy to tax years from 1997 forward.  The superior court ruled that Valdez must exhaust Revenue's administrative appeals process before requesting relief from the superior court and remanded the claims for the years 1974-1996 to Revenue.  Valdez's claims for tax years 1997 forward survived, but the parties agreed to stay those claims pending administrative proceedings.

In 2001 Valdez pursued its objections to the 1974-2000 assessments before Revenue; it also timely appealed Revenue's 2001 and 2002 assessments before the agency.  Valdez claimed that Revenue had omitted taxable vessels from its AS 43.56 assessment rolls in each of these years.  Valdez also asserted that, pursuant to the superior court's August 2000 remand order, its "request [was] not time-barred by any applicable statute of limitations."

---

**18**　　*See City of Valdez I*, 372 P.3d 240, 245 (Alaska 2016) (holding that Revenue's taxability appeals regulation impermissibly delegated authority to decide taxability appeals to Revenue, contravening statutory grant of authority to SARB to hear all initial assessment appeals).

Revenue assigned the matter to a hearing officer. The hearing officer notified the Corporation that its property was implicated in the administrative appeal and invited it to participate in the briefing. The Corporation submitted a brief arguing that its property was not subject to AS 43.56 taxation. It also argued that Revenue could not retroactively assess taxes on its property because of the time limitation contained in AS 43.05.260.

The hearing officer did not address the Corporation's argument about AS 43.05.260. Instead, he rejected Valdez's pre-1997 appeals by holding that the rule in existence before the 1997 policy change was simply a different policy, not a legal error, so the omission of certain property from the assessments was not an error. The hearing officer denied the 1999 and 2000 appeals, ruling that Valdez had not timely appealed. Finally, the hearing officer granted the 2001 and 2002 appeals in part, adding some vessels to the assessment roll for those years.

Valdez appealed to the Revenue Commissioner. In December 2007 the Commissioner adopted the decision of an appointed hearing officer, ruling that Valdez was barred from compelling Revenue to reopen tax assessments for the years 1974-1994 by AS 09.10.120(a), which establishes a six-year limitations period for actions by a municipality. The Commissioner also ruled that Revenue's decision not to retroactively apply the revision to its taxability policy was reasonable; therefore, it upheld the Revenue's 1995 and 1996 assessments. But the Commissioner ruled that factual issues precluded dismissal of the 1997-2002 appeals.

In 2010 the superior court affirmed the Commissioner's decision, including the ruling that AS 09.10.120's six-year limitations period barred Valdez from challenging taxability determinations for tax years 1974-1994. The superior court's

order left two sets of appeals open to further administrative proceedings: the 1997-2000 appeals and the 2001-2002 appeals.[19]

Meanwhile, Valdez continued to timely object to Revenue's AS 43.56 assessment roll each year. Valdez and Revenue agreed to stay Valdez's appeals for each tax year beginning in 2003 pending the outcome of the earlier appeals. The superior court ruled that Revenue used an improper test for determining whether vessels are taxable under AS 43.56.

In 2010 an administrative law judge (ALJ) considered the merits of Valdez's objections to the 1997-2000 taxability determinations. Valdez argued that the "primary use" test that Revenue adopted in 1997 and the agency's application of that test to the Corporation's vessels was not faithful to AS 43.56. The ALJ rejected these appeals and Valdez's related discovery requests. The Commissioner adopted the ALJ's decision in August 2010. Valdez timely appealed to the superior court.

A different ALJ evaluated Valdez's objections to the 2001 and 2002 supplementary assessment rolls. The ALJ ruled that Revenue's taxability determination was reasonable. After the Commissioner adopted the ALJ's decision, Valdez timely appealed this decision to the superior court as well.

At this point Valdez had three sets of challenges pending before the superior court: judicial review of its administrative challenge to the 1997-2000 assessment rolls; judicial review of its administrative challenge to the 2001 and 2002 supplementary assessment rolls; and Valdez's lawsuit seeking injunctive relief for tax years 1997 and beyond. The superior court consolidated these challenges.

In 2013 the court issued a decision rejecting Revenue's "primary use" analysis. It criticized the agency's reliance on the oil spill response plans as overly

---

[19]     Revenue bifurcated these two sets of appeals because the agency had issued supplementary assessments for the 2001 and 2002 tax years. The ALJ determined that the supplementary assessments warranted separate consideration.

simplistic. The court remanded to Revenue with instructions to "more carefully evaluate the relationship of the Terminal and Tanker [response plans] so that any response equipment contained in either Plan that is primarily committed to Terminal operations [is] identified and taxed."[20] The superior court also upheld Revenue's regulations making taxability appeals proceed internally before the Commissioner, rather than before SARB. Valdez appealed that latter ruling. In 2016 we reversed, ruling that taxability appeals must proceed before SARB, not as an internal agency appeal.[21]

In the aftermath of our decision, Revenue dismissed Valdez's pending appeals for tax years 1997-2015, and SARB took jurisdiction of them. While Revenue notified the Corporation that it had dismissed Valdez's pending appeals, it did not relay that SARB had taken jurisdiction.

In the years that followed, Valdez also appealed Revenue's 2017, 2018, and 2019 assessments to SARB. Valdez and Revenue agreed to stay those appeals while they worked toward a memorandum of understanding for cooperative assessment. SARB granted the stays but ordered that they would expire in March 2020, noting the need for resolution. SARB did not notify the Corporation of Valdez's 2017-2019 appeals or agreement to stay those appeals.

> **2. The parties disputed whether taxes may be assessed under a new taxability standard for all the tax years under review, from 1997 onward, in light of AS 43.05.260.**

Before SARB the parties began to dispute how a new rule for determining what property was taxable could be applied to Valdez's pending appeals, which had now grown to include tax years from 1997 to 2019. Specifically, the parties disputed

---

[20] *City of Valdez v. Dep't of Revenue*, 3VA-00-00022 CI, 3VA-10-0084 CI, 3AN-11-07874 CI, at *18 (Alaska Super., Nov. 18, 2013).

[21] *See City of Valdez I*, 372 P.3d at 243.

whether Revenue could still assess taxes on property it had deemed nontaxable many years before.

In March 2020 SARB scheduled a hearing for later that month, sending notice to Valdez and Revenue. On the same day, Revenue sent a letter notifying the Corporation of the appeals stayed before SARB for the years 1997-2019 and inviting the Corporation to participate in the upcoming prehearing conference. The letter also explained to the Corporation, for the first time, that Revenue expected to conduct an audit to identify the Corporation's taxable property for past tax years.

At the prehearing conference, Valdez and Revenue announced that they had agreed on a revised taxability assessment methodology but disagreed on the number of past tax years that should be revisited. Valdez took the position that the audit should include all of the tax years for which Valdez had pending appeals — extending back to 1997. Revenue argued that it should only apply its updated methodology to the previous three tax years, citing AS 43.05.260 and due process concerns. Valdez and Revenue requested that SARB stay proceedings for another year while they resolved this disagreement through additional briefing.

SARB granted the stay but declined the requested briefing, stating that it would "not entertain arguments that Tax Years 1997 through 2016 should not be included in the audit." The Corporation intervened and reiterated the other parties' request for briefing on the tax years at issue. SARB denied the Corporation's request. The Corporation appealed SARB's orders granting the stay and denying briefing to the superior court.

### 3. The superior court ruled that AS 43.05.260 precluded Revenue from assessing taxes on the Corporation's property for tax years before 2017.

In 2022 the superior court reversed SARB's 2020 orders related to limitation on the audit. First, the superior court rejected Valdez's argument that the scope of the audit had already been resolved in the prior appeals and therefore should

not be revisited. The "law of the case doctrine generally precludes reconsideration of issues that already were adjudicated in a prior appeal."[22] Valdez had argued that two prior decisions had already implicitly rejected the statute of limitations argument based on AS 43.05.260: (1) the Commissioner's 2007 decision holding that AS 09.10.120(a) barred Valdez from challenging taxability determinations in tax years before 1997, which was affirmed by the superior court in 2010; and (2) the superior court's decision in 2013 rejecting Revenue's approach to taxability and remanding for further proceedings. The superior court rejected these arguments, concluding that those decisions did not concern AS 43.05.260.

Second, the superior court held that the three-year limitation period in AS 43.05.260 prohibited Revenue from auditing and assessing tax on the Corporation's vessels for tax years prior to 2017. The superior court reasoned that declining to enforce the three-year limit for assessing taxes "would produce an absurd and incongruous result," leaving "property owners vulnerable to tax liability for an indefinite period of time."

The superior court also rejected Valdez's argument that applying AS 43.05.260's time limit for assessing taxes to AS 43.56 negated municipalities' statutory right to appeal taxability determinations. Citing our decision in *City of Valdez I*,[23] the superior court observed that the appeal process for oil and gas property taxes is highly expedited. In light of this expedited process, the court reasoned that a municipality can successfully challenge Revenue's determination that certain property is not taxable and still have taxes assessed on the property within the three-year limit. It characterized the series of stipulations and delays agreed upon by Valdez and

---

[22]    *Basey v. State, Dep't of Pub. Safety, Div. of Alaska State Troopers, Bureau of Investigations*, 462 P.3d 529, 534 (Alaska 2020) (citing *Beal v. Beal*, 209 P.3d 1012, 1016 (Alaska 2009)).

[23]    372 P.3d at 256.

Revenue, which resulted in Valdez's taxability appeal being drawn out for more than a decade, as "directly contraven[ing] the accelerated administrative appeals process set forth by the legislature in AS 43.56." Accordingly, the court concluded that AS 43.05.260's three-year limitations period applies to tax assessments under AS 43.56, even if Revenue's initial decision not to tax certain property was wrong. The court therefore reversed SARB's decision regarding the scope of Revenue's audit of the Corporation's vessels.

Valdez appeals.

## III. DISCUSSION

### A. The Law Of The Case Doctrine Does Not Apply.

Valdez argues that the superior court decisions in 2010 and 2013 already ruled, at least implicitly, that Revenue may issue assessments for the Corporation's vessels for tax years before 2017. Because those earlier decisions were never appealed, Valdez argues that the superior court should not have revisited this issue in the most recent proceedings. By doing so, Valdez argues, the superior court violated the law of the case doctrine.

"The law of the case doctrine . . . 'generally prohibits the reconsideration of issues which have been adjudicated in a previous appeal in the same case.' "[24] The law of the case doctrine applies both to issues " 'directly involved with or necessarily inhering in a prior appellate decision' and those 'that could have been part of a prior appeal but were not.' "[25] This doctrine discourages "piecemeal appeals" and promotes

---

[24] *Dapo v. State, Dep't of Health and Soc. Servs*, 509 P.3d 376, 381 (Alaska 2022) (quoting *Beal*, 209 P.3d at 1016).

[25] *State, Com. Fisheries Entry Comm'n v. Carlson* (*Carlson V*), 270 P.3d 755, 760 (Alaska 2012) (quoting *Beal*, 209 P.3d at 1017).

"(1) avoidance of indefinite litigation[]; (2) consistency of results . . . (3) . . . fairness between the parties; and (4) judicial efficiency."[26]

"[T]he law of the case doctrine 'is not an absolute rule of law' but rather 'a matter of sound judicial policy.' "[27] "[I]ssues previously adjudicated can only be reconsidered where there exist exceptional circumstances presenting a clear error constituting a manifest injustice."[28] Even "[i]f the elements of the law of the case doctrine are met, the superior court still has discretion whether to apply it."[29]

Valdez argues that the law of the case doctrine applies here because a decision that AS 43.56.260 does not preclude Revenue from taxing the Corporation's vessels "necessarily inhered" in two prior decisions: (1) a 2007 decision by the Revenue Commissioner ruling that a *different* statute of limitations barred Valdez's challenge to certain tax years, which was affirmed by the superior court in 2010; and (2) the superior court's 2013 decision striking down Revenue's taxability standard and remanding for further proceedings.

The Commissioner's decision in 2007, affirmed by the superior court in 2010, did not concern AS 43.05.260, even implicitly. It concerned a different statute of limitations, AS 09.10.120. That statute of limitations allows the state or a political

---

**26**    *Beal*, 209 P.3d at 1017 (quoting *Petrolane Inc. v. Robles*, 154 P.3d 1014, 1026 (Alaska 2007)).

**27**    *Hallam v. Holland Am. Line, Inc.*, 180 P.3d 955, 958 (Alaska 2008) (quoting *West v. Buchanan*, 981 P.2d 1065, 1067 (Alaska 1999)).

**28**    *Carlson V*, 270 P.3d at 760 (quoting *State, Com. Fisheries Entry Comm'n v. Carlson* (*Carlson III*), 65 P.3d 851, 859 (Alaska 2003)).

**29**    *Robert A. v. Tatiana D.*, 474 P.3d 651, 655 (Alaska 2020), *see also Smith v. Cleary*, 24 P.3d 1245, 1248 (Alaska 2001) ("The doctrine of the law of the case is a matter of judicial policy and describes 'the practice of courts generally to refuse to reopen what has been decided,' but does not limit their power to do so." (quoting *West*, 981 P.2d at 1067)).

subdivision to bring a legal action within six years of when the cause of action accrues.[30] Applying that statute, the Commissioner ruled that the action Valdez filed in superior court in 2000 seeking to compel Revenue to reopen assessments dating back to 1974 was largely time-barred. Accordingly the Commissioner denied Valdez's challenges to tax years 1974-1994, while permitting its challenges to later tax years to move forward. The superior court affirmed the Commissioner's decision in 2010.

This decision did not address the applicability of AS 43.05.260, nor did a ruling on that statute "necessarily inhere" in the decision. A ruling that Valdez could *challenge* Revenue's determinations in certain tax years did not implicitly reject any defenses that a taxpayer might have to the collection of tax in those years (such as a different statute of limitations protecting taxpayers). In fact, the Commissioner's 2007 decision clarified that "[o]utstanding issues relating to the 1997-2002 tax years remain that have not been fully briefed and may raise issues . . . disputed by the parties."

The 2013 superior court decision did not establish law of the case on AS 43.05.260 either. The court in 2013 addressed three issues: (1) whether SARB had jurisdiction over AS 43.56 taxability determinations; (2) whether Revenue erred when determining taxability; and (3) whether Revenue erred by denying Valdez discovery related to the taxability issue. With respect to the second issue, the superior court concluded that "[Revenue] unreasonably relied upon the [oil spill response plans] to determine whether oil spill response vessels and equipment [were] taxable property" and "remanded to [Revenue] for proceedings consistent with this opinion." This open-ended mandate, which directed Revenue to come up with a new taxability standard and

---

[30] AS 09.10.120(a).

then apply it, did not necessarily rule that this new standard could be applied to assess taxes dating back to 1997.[31]

Finally, Valdez asserts that the law of the case doctrine applies because either Revenue or the Corporation should have raised timeliness under AS 43.05.260 during earlier proceedings but did not. But the Corporation was not involved in those appeals.[32] Revenue might have raised this issue earlier, but Revenue is not obliged to assert taxpayers' defenses to its own taxing authority. The statute of limitations is meant to protect the taxpayer. Therefore, we disagree with Valdez that the superior court erred by considering AS 43.05.260 in the most recent appeal.

## B. Alaska Statute 43.05.260 Bars Revenue From Assessing Taxes On Oil And Gas Property More Than Three Years After The Tax Return Is Filed.

Valdez argues that the superior court erred by holding that AS 43.05.260 prevents Revenue from assessing taxes on the Corporation's property for most of the tax years Valdez has appealed.

"When the superior court is acting as an intermediate court of appeal in an administrative matter, we independently review the merits of the agency or administrative board's decision."[33] "We apply different standards of review to agency

---

[31] *Cf. State, Dapo v. Dep't of Health and Soc. Servs.*, 509 P.3d 376, 382 (Alaska 2022) (clarifying that general mandate "for further proceedings consistent with this opinion," without further instructions, did not preclude lower court from later considering dispositive issue that would preclude recovery).

[32] The Corporation did argue in a 2002 administrative proceeding that the AS 43.05.260 limitation period prohibited Revenue from making a supplemental assessment for tax years prior to 1997. But the hearing officer rejected Valdez's pre-1997 claims on other grounds. For the most part the Corporation was not a party to subsequent proceedings.

[33] *Davis Wright Tremaine LLP v. State, Dep't of Admin.*, 324 P.3d 293, 298 (Alaska 2014) (quoting *Shea v. State, Dep't of Admin., Div. of Ret. & Benefits*, 267 P.3d 624, 630 (Alaska 2011)).

decisions depending on the subject of review."[34] On questions of law involving "agency expertise or the determination of fundamental policies within the scope of the agency's statutory functions," we apply the reasonable basis standard of review.[35] When questions of law do not involve the agency's expertise "[w]e apply the substitution of judgment standard," in which we may "substitute [our] own judgment for that of the agency even if the agency's decision had a reasonable basis in law."[36] "Application of the relevant statute of limitations is a legal question involving no agency expertise . . . ."[37] Therefore we apply our independent judgment to interpret AS 43.05.260.

When using our own judgment to interpret a statute, we interpret it "according to reason, practicality, and common sense, considering the meaning of the statute's language, its legislative history, and its purpose."[38] We "consider collectively statutes addressing common subject matter, reading them 'as a whole in order that a total scheme evolves which maintains the integrity of each act and avoids ignoring one or the other.' "[39] "The goal of statutory construction is to give effect to legislature's intent, with due regard for the meaning the statutory language conveys to others."[40]

---

[34] *Id.* at 298-99.

[35] *Marathon Oil Co. v. State, Dep't of Nat. Res.*, 254 P.3d 1078, 1082 (Alaska 2011) (citing *Matanuska–Susitna Borough v. Hammond*, 726 P.2d 166, 175 (Alaska 1986)).

[36] *Davis Wright Tremaine LLP*, 324 P.3d at 299 (quoting *Tesoro Alaska Petroleum Co. v. Kenai Pipe Line Co.*, 746 P.2d 896, 903 (Alaska 1987)).

[37] *Irby v. Fairbanks Gold Min., Inc.*, 203 P.3d 1138, 1141 (Alaska 2009) (citing *Bailey v. Tex. Instruments, Inc.*, 111 P.3d 321, 323 (Alaska 2005)).

[38] *State v. Fyfe*, 370 P.3d 1092, 1095 (Alaska 2016) (quoting *State, Div. of Workers' Comp. v. Titan Enters., LLC*, 338 P.3d 316, 320 (Alaska 2014)).

[39] *State v. Strane*, 61 P.3d 1284, 1286 n.4 (Alaska 2003) (quoting *Hafling v. Inlandboatmen's Union of Pacific*, 585 P.2d 870, 878 (Alaska 1978)).

[40] *City of Valdez I*, 372 P.3d 240, 254 (Alaska 2016).

Valdez offers two arguments why AS 43.05.260 should not apply in this case. First, it maintains that this statute of limitations does not apply to oil and gas property taxes at all. Second, and in the alternative, it argues that there are implicit exceptions when a municipality successfully challenges Revenue's determination that property is not taxable. Valdez asserts that it is impossible to challenge Revenue's determination that certain property is not taxable through several levels of administrative and judicial review in less than three years. When a municipality does succeed in such an appeal and a court determines that certain property is or could be taxable, Valdez argues, AS 43.05.260 must be interpreted to allow Revenue to tax that property even if the tax return was filed more than three years earlier. Valdez also asserts that the limitations period impliedly allows for a court-ordered "reassessment" following a successful challenge to Revenue's finding of nontaxability. Without these implied exceptions, Valdez argues, its right to appeal would be meaningless.

1. **Alaska Statute 43.05.260's three-year limit for assessing taxes applies to oil and gas property taxes under AS 43.56.**

Title 43 of the Alaska Statutes governs revenue and taxation. Among the general provisions for the administration of revenue and tax laws is AS 43.05.260, which limits the amount of time to levy tax:

> Except as provided in (c) of this section, AS 43.20.200(b), and AS 43.55.075, the amount of a tax imposed by this title must be assessed within three years after the return was filed, whether or not a return was filed on or after the date prescribed by law. If the tax is not assessed before the expiration of the applicable period, proceedings may not be instituted in court for collection of the tax.

There are only a few exceptions to this time limit. The limit does not apply to two specific kinds of tax: income tax imposed under the Alaska Net Income Tax Act and oil and gas *production* tax.[41] And the statute waives the three-year limit in certain

---

[41]    *See* AS 43.20.200(b); AS 43.55.075(a).

scenarios: if the taxpayer does not file a return; if the return is fraudulent; and if the taxpayer and Revenue agree in writing to extend the time limit before it expires.[42]

When the legislature specifies certain exemptions from a statute, we infer that those are the only things the legislature meant to exempt.[43] The oil and gas property tax statute is not listed among the exemptions, so we infer that the legislature intended oil and gas property tax assessments to be subject to AS 43.05.260's three-year limit.

Legislative history confirms this interpretation. When introducing the legislation that would become AS 43.05.260 to the legislature, Governor Jay Hammond described its purpose to "set[] a uniform limitation period for assessment and collection of tax" in order to "achieve uniform tax administration and assure timely assessment and collection of taxes."[44] A Department of Revenue official echoed the governor's statement, explaining that the legislation was intended "to provide for administrative uniformity in procedures and ease of compliance with our tax laws by taxpayers."[45] These expressions of intent confirm the meaning of the plain text: the limitations period applies to all types of tax assessments except those expressly exempted.

Valdez's reliance on a canon of construction does not outweigh this clear intent. It is true that in the tax context, limitations like AS 43.05.260(a) are to be "strictly construed in favor of the government" — that is, in favor of tax collection.[46]

---

[42]     AS 43.05.260(c).

[43]     *See Vanvelzor v. Vanvelzor*, 219 P.3d 184, 188 (Alaska 2009) ("We follow the doctrine of statutory construction that when the legislature expressly enumerates included terms, all others are impliedly excluded.").

[44]     Letter from Jay S. Hammond, Governor, to Chancy Croft, Senate President (transmitting SB 511 to Senate), 1976 S. Journal 45.

[45]     Memorandum from Frederick P. Boetsch, Deputy Commissioner for Tax'n, Dep't of Revenue, to R.D. Stevenson, Special Assistant, Dep't of Revenue (March 12, 1975).

[46]     *State, Dep't of Revenue v. Alaska Pulp Am., Inc.*, 674 P.2d 268, 274 (Alaska 1983).

Valdez maintains that applying the limitations period in the circumstances of this case — after a municipality successfully challenges Revenue's determination that certain property is not taxable — makes it difficult or impossible to collect the tax that is (or may be) owed. We address Valdez's timing argument in detail below. But assuming for the moment Valdez is correct, the possibility that AS 43.05.260 might make it difficult or impossible to collect a tax in a discrete scenario under AS 43.56 does not suggest to us that the legislature intended to exempt the entire chapter from the statute of limitations when the statutory text says the contrary.

### 2. There is no silent exception to AS 43.05.260 for municipal taxability appeals.

In the alternative, Valdez argues that if a municipality challenges the determination that the property is not taxable and prevails on appeal, Revenue may then assess taxes on the property even if more than three years have passed since the tax return was filed. To reconcile this argument with the statutory text, which does not mention any exception for taxability appeals, Valdez relies on precedent indicating that a timely assessment of tax can later be revised beyond AS 43.05.260's three-year deadline. Valdez argues that when Revenue initially determines that property is not taxable, that counts as an "assessment" that can later be "revised" if it is determined that the property should have been found taxable.

To support this argument Valdez cites an administrative decision by the Commissioner of Revenue and two of our own decisions. In *Matter of Exxon Corp. and Certain Affiliated Companies*, the Revenue Commissioner ruled that when a taxpayer appeals an assessment, AS 43.05.260 does not bar Revenue from issuing an amended assessment beyond the three-year deadline while the appeal is pending.[47] The Commissioner reasoned that the amended assessment is timely because it "relates back"

---

[47] Department of Revenue Decision No. 89-053, 1989 WL 129054, at *9-11 (May 26, 1989).

to a timely original assessment.[48]  Valdez also cites *BP Pipelines (Alaska) Inc. v. State, Dep't of Revenue*.[49]  In that case the superior court, after a trial de novo to review Revenue's valuation of the Trans-Alaska Pipeline System, ruled that the property's value was greater than Revenue had assessed and ordered Revenue to issue a revised assessment.[50]  We held that the superior court's decision to assess interest dating back to Revenue's initial assessment was proper because the judgment "was not a new assessment but instead a reassessment of the original, mistaken assessed value of the pipeline."[51]  According to Valdez, these decisions establish a rule that an assessment can be revised beyond AS 43.05.260's three-year deadline so long as the original assessment was timely.

Valdez then argues that this rule — that timely assessments can be revised more than three years after the return was filed — should apply when Revenue determines certain property is not taxable.  For this point Valdez cites our decision in its prior appeal[52] to argue that a determination that certain property is not taxable counts as an assessment.  Our decision discussed at length the meaning of the term "assessment" as used in AS 43.56.  We held that an "assessment" includes both the determination whether property is taxable and a determination of the property's value.[53]

---

**48**    *Id.*

**49**    325 P.3d 478 (Alaska 2014).

**50**    *Id.* at 481, 495.

**51**    *Id.* at 496.

**52**    *City of Valdez I*, 372 P.3d 240 (Alaska 2016).

**53**    *See id.* at 248-56.  We described the decision whether a piece of property is taxable as "an integral component of 'assessment' "; "a necessary step"; and "an initial step" in the assessment.  *Id.* at 252.  We reasoned that "the text of the overall statutory scheme, the common usage of the term 'assessment' in the property taxation context, and the significant consequences of Revenue's interpretation of the statute" lead to the conclusion that "assessment" encompasses the initial taxability determination as well as the valuation.  *Id.* at 252-53.

Because AS 43.56 provides "that SARB shall hear administrative appeals of all 'assessment[s]' of oil and gas property," we held that SARB had jurisdiction to hear appeals concerning both taxability and valuation.

However, *City of Valdez I* does not support Valdez's attempt to overcome the statutory text. Under AS 43.56.260, the "amount of tax imposed . . . must be assessed within three years after the return was filed." And if the "tax is not assessed" by that deadline, it cannot be collected.[54] Although in *City of Valdez I* we determined that deciding whether property is taxable is a necessary part of any "assessment," that does not mean that Revenue has "assessed" an "amount of tax" on a piece of property when it has determined the property is *not* taxable and has levied *no* tax. Put differently, AS 43.05.260's deadline is not satisfied by making an "assessment," but only when an "amount of tax" is "assessed." In this matter no tax was ever assessed on the Corporation's property, in contrast to the *Exxon* and *B.P. Pipelines* matters, in which Revenue did assess an amount of tax, which the taxpayers challenged. The *Exxon* and *B.P. Pipelines* decisions are not on point. To the extent those decisions establish a rule that a timely assessment of tax may be revised outside AS 43.05.260's three-year deadline, this case does not fall within that rule.

Valdez argues that the logic of those decisions should nevertheless apply so that a determination that property is not taxable can later be revised outside the three-year deadline. Valdez maintains that the purpose of the three-year limitation is to give taxpayers timely notice of the claims against them. Because the Corporation had notice of Valdez's claims, Valdez asserts that allowing assessment of tax outside the three-year period does not undermine AS 43.05.260's underlying purpose.

But Valdez's argument sweeps more broadly than a single taxpayer. If we construe AS 43.05.260 as Valdez suggests, even taxpayers who were not aware their

---

[54]     AS 43.05.260(a).

properties might be taxed could receive an assessment many years after filing their return, if a court determines that Revenue was employing the wrong approach to taxability.[55]

For that reason, Valdez's interpretation runs counter to the statute's apparent purpose. When Revenue demands that a property owner pay taxes, and the taxpayer challenges that assessment, the taxpayer can fairly expect the amount of tax ultimately assessed to go up or down depending on what the evidence reveals. That taxpayer also can be expected to maintain records and other evidence important to the dispute. Allowing Revenue to amend its initial assessment based on the outcome of the taxpayer's appeal, even if three years have passed since the return was filed, does not contradict the policy of a limitations period — giving the taxpayer notice of the claim so that it can preserve evidence and conduct affairs accordingly.[56] The same cannot be said when a municipality challenges Revenue's determination that certain property is not taxable. The property owner was led to believe that its property was not taxable and may have no reason either to preserve records related to that property or to arrange its financial affairs so it can pay a property tax. Allowing Revenue to assess tax on property a decade after determining that the property was not taxable risks precisely the kind of prejudice that AS 43.05.260's three-year limit is meant to avoid. Valdez's proposed exception to the statute not only lacks a basis in the text, it is contrary to the statute's underlying policy.

---

[55] At oral argument, Valdez acknowledged this was its position.

[56] *See e.g.*, *Ragland v. Alpha Aviation, Inc.*, 686 S.W.2d 391, 393 (Ark. 1985) (observing that one of the purposes of Arkansas's similar statute of limitations is to "limit the time for which a taxpayer must be responsible for answering to an assessment" and concluding that "there is no surprise or prejudice to the taxpayer" when the state first sends a proposed assessment within the limitations period and later sends a final assessment at the conclusion of the appeal), *aff'd on reh'g*, 688 S.W.2d 301 (Ark 1985).

Valdez next argues that, as a municipality, its right to appeal is equal to that of a taxpayer, and AS 43.05.260 should be interpreted in that light. This argument depends on the assertion that it would be impossible to complete a taxability appeal within three years after a tax return is filed. It would be absurd, Valdez argues, to give municipalities a right to appeal taxability determinations if the property cannot be taxed even when they prevail. Valdez maintains that AS 43.05.260 must be construed to avoid that absurd result.[57]

We disagree with the premise of Valdez's argument. We are not convinced that it is impossible to complete a taxability appeal within the three-year time frame set by AS 43.05.260. The statutes and regulations governing oil and gas property tax determinations provide for an extremely expedited administrative process. Owners of potentially taxable property are to file a return by January 15.[58] Revenue is to send those owners (and municipalities) a notice of assessment showing the assessed value of the property by March 1.[59] Any objection to this notice by either the owner or municipality must be made to Revenue within 20 days of the notice.[60] Revenue then has up to 30 days after the notice to issue an informal conference decision on the objection — meaning by March 31.[61]

The informal conference decision can then be appealed to SARB within 50 days of the assessment notice, and any cross appeals or interventions must be filed

---

[57]     *See Sherbahn v. Kerkove*, 987 P.2d 195, 201 (Alaska 1999) ("In ascertaining the legislature's intent, we are obliged to avoid construing a statute in a way that leads to a glaringly absurd result.").

[58]     AS 43.56.070; 15 AAC 56.005(a)-(b).

[59]     AS 43.56.100(a).

[60]     AS 43.56.110(a).

[61]     AS 43.56.110(c).

within 60 days of the notice.[62]   SARB must then hold a hearing on the appeal approximately 80 days after the notice of assessment and certify its determination within seven days of that hearing.[63]   In sum, a municipality challenging a determination of nontaxability is entitled to a final administrative decision less than three months after the notice of assessment.

Judicial review may also be expedited.  A municipality is entitled to a trial de novo in the superior court,[64] but the civil rules provide for expedited proceedings.[65] The appellate rules allow expedited review in this court too.[66]  And if a municipality succeeds in its taxability appeal but fears that Revenue may not issue an assessment before the three-year limit is up, the municipality may ask the superior court to "compel the agency to initiate action."[67]   In light of the expedited framework for oil and gas property tax appeals and the ability to expedite judicial review, it should not be impossible for a municipality to pursue a successful taxability appeal quickly enough to ensure the property in question may be taxed within the time allotted by AS 43.05.260.

Although this case took an extraordinary amount of time to resolve, the delays in this case do not seem inherent in the appeals procedure under AS 43.56.  The delays are largely attributable to Revenue's position that taxability appeals belonged

---

[62]    AS 43.56.120(a); 15 AAC 56.030(a)-(c).

[63]    AS 43.56.130(g); 15 AAC 56.030(e).

[64]    AS 43.56.130(i).

[65]    Alaska R. Civ. P. 16(a)(1) (providing pretrial conference for, among other purposes, "expediting the disposition of the action").

[66]    Alaska R. App. P. 503.5(e) (providing for scheduling conference with clerk of appellate courts when deviation from standard briefing deadlines is necessary due to exceptional circumstances).

[67]    AS 44.62.560(e) ("If agency action is unlawfully withheld or unreasonably withheld, the superior court may compel the agency to initiate action.").

before the agency, rather than before SARB. We rejected that approach in *City of Valdez I*, largely because the approach evaded the legislature's intent for an expedited appeal system that tracked the "rhythm of yearly tax collection."[68] With that mistake corrected, taxability appeals should now be on a fast track. The delays in this case also reflect, to a lesser extent, the parties' decisions to stay Valdez's appeals for many successive tax years for consolidated consideration rather than to proceed with the initial challenge to the substance of Revenue's taxability standard. We do not mean to second-guess Valdez's litigation strategy; we address the point only to explain why taxability appeals should not normally take as long as this one did.

Finally, we address Valdez's argument that AS 43.05.260 must be interpreted so as to put municipalities on an equal plane with taxpayers. Municipalities are not equally situated with taxpayers. Municipalities have a significant advantage. If Revenue determines that certain property is not taxable under AS 43.56, Revenue has taken the position that the municipality can tax the property itself under its own ordinances.[69] To be sure, municipal ordinances may not cover every item of property deemed nontaxable by Revenue under AS 43.56, and there may be limits on the total amount the municipality may collect.[70] But Valdez's separate authority to tax undercuts its suggestion that the legislature intended to create a silent exception to the statute protecting taxpayers from tardy assessments in order to benefit municipalities.

---

[68] 372 P.3d 240, 255-56 (Alaska 2016).

[69] *See* 1980 INFORMAL OP. ATT'Y GEN., 1980 WL 27822 (Aug. 8, 1980) (explaining that Department's decision that oil and gas property is not taxable under AS 43.56 permits municipalities to independently assess and tax that property).

[70] In the past, Valdez amended its municipal ordinances to tax a particular class of vessels. *See* former Valdez Mun. Code § 3.12.020 (1999) (enacting a local tax on U.S. certified boats and vessels of at least ninety-five feet in length that visit Valdez ports). This ordinance was ruled unconstitutional by the U.S. Supreme Court in *Polar Tankers, Inc. v. City of Valdez, Alaska*, 557 U.S. 1 (2009), because it violated the Tonnage Clause of the U.S. Constitution.

We are sympathetic to the difficult position in which Valdez finds itself. Despite prevailing on both procedural and substantive grounds in appealing decades of tax rulings, it can obtain tangible relief only for the most recent tax years. But there is no statutory basis for Valdez's argument that there is an exception in AS 43.05.260 for appeals by a municipality. We therefore conclude that even when an administrative tribunal or court holds that Revenue wrongly determined certain property was not taxable, AS 43.05.260 bars Revenue from assessing a tax on the property more than three years after the tax return was filed.

## IV.  CONCLUSION

We AFFIRM the superior court's decision.